THOMAS PALMER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon June 16, 1891.*

1. INDICTMENT FOR MURDER — *manner of death — how alleged.* An allegation in an indictment for murder, that the defendant, "with a certain revolver loaded with gunpowder and leaden bullets, which he, the said C D, then and there held in his hand, he, the said C D, did then and there feloniously, unlawfully, willfully, and of his malice aforethought, shoot off and discharge at and upon the said A B, thereby, and by thus striking the said A B with one leaden bullet that discharged from the revolver in the hand of the said C D, inflicting on and in the right side of him, the said A B, one mortal wound," etc., shows sufficiently that the deceased was struck by the bullet discharged from the revolver. No particular word or phrase need show the manner and means of death, if such fact is made plainly to appear.

2. The concluding part of an indictment for murder, "and so the said C D did, in the manner and form aforesaid, feloniously, unlawfully, willfully, and of his malice aforethought, the said A B kill and murder," etc., will be sufficient, without charging, "and so the grand jurors aforesaid, upon their oaths aforesaid, do say, that the said C D did," etc. when the omitted words appear at the beginning of the count.

3.   Where the indictment shows the wound was given one day, and the deceased languished or grew weaker until the next day, and died, this will be sufficient to show that he died of the mortal wound given, of which he languished to death. The respective dates of the stroke and of the death in such case will be sufficiently stated.

4.   SAME—*allegation of time.* Where one fact is alleged in an indictment, with the time and place, the words "then and there," subsequently used as to the occurrence of another fact, refer to the same point of time and the same place, and necessarily import that the two were coincident. It is sufficient if these words are repeated to every other material fact set up in the count.

5.   SAME—*deceased, a human being.* An indictment for the murder of one George Bopp need not aver that he was a human being, as the name imports a human being.

6.   SAME—*sufficient proof under.* On a trial for murder the proof showed that a warrant had been issued by a justice of the peace for the arrest of the defendant upon a charge for bastardy, and placed in the hands of the deceased, a constable, for his arrest; that the defendant, expecting such a warrant, armed himself for the express purpose of resisting arrest, and when the deceased, on finding him, attempted his arrest, he shot the deceased and killed him : *Held,* that the evidence was sufficient to sustain a verdict finding him guilty of manslaughter.

7.   MURDER—*resisting arrest under warrant without seal.* Where a party expecting a warrant for his arrest on a charge of bastardy, forms a malicious intention to resist and kill any officer who shall attempt to arrest him on such charge, and in furtherance of such purpose does shoot and kill a constable while attempting his arrest, knowing and believing that the deceased only intended to arrest him on such charge, and not in self-defense, he will be guilty of murder, notwithstanding the fact that the warrant so to be executed is illegal, in having no seal.

8.   EVIDENCE—*defective warrant—for what purpose admissible.* On the trial of one for the murder of a constable while attempting the arrest of the defendant on a bastardy warrant having no seal attached thereto, when the theory of the defense was that the killing was in self-defense, and in resistance to a supposed hostile movement of the deceased when the latter stretched out his arm, the warrant, though technically defective in the matter of a seal, is admissible in evidence for the prosecution to show why the deceased put his hand upon, or attempted to put his hand upon, the defendant, and that the movement of the deceased was made for a lawful purpose, and under authority of a writ.

9.   SAME—*statements of defendant tending to show malice and animus.* On such a trial, the court, after the introduction of the warrant in evidence, allowed the People to show that two days before the homicide

the defendant, on passing N, who had been a constable, remarked to the witness: "N aims to arrest me; * * * yes, I believe he is going to arrest me;" that defendant drew a revolver from his pocket, saying, "if he tries to arrest me he will hear from this," and then said he had got into trouble with a girl, and was going to leave the next morning. The proof also showed that he did leave the State after the homicide: *Held*, that the statements of the defendant were proper evidence, as tending to show general malice against any officer who might attempt to arrest him, and, taken in connection with his exhibition of a deadly weapon, showed his *animus*, and tended to show a premeditated design to make resistance to the arrest he expected.

10.   Where a person makes a threat that he will use a revolver upon one whom he supposes to be a constable, in case he attempts his arrest, showing a purpose to resist arrest by any officer, it will be competent evidence against him on his trial for the subsequent killing of a constable while attempting to arrest him, as tending to show malice and evil intention on his part, and to give character to his act in killing the deceased, whether the latter knew of his threats or not.

11.   INSTRUCTIONS—*should not be inconsistent or repeated.* An instruction is properly refused which assumes a warrant without a seal to be valid, when the party has asked other instructions to the effect the warrant is invalid, and which also assumes a material fact contrary to the evidence and his own testimony, and when all that is material in the refused instruction is contained in one given.

12.   PRACTICE—*improper remarks of counsel—jury directed to disregard—no injury.* On the trial of one for the homicide of a constable while attempting to arrest the defendant under a warrant of bastardy which lacked the seal of the justice, on exception of defendant to the remarks of the prosecution in respect to the charge of bastardy, the court directed counsel to confine his remarks to the record, and charged the jury that it was their duty to give no consideration to such remarks, and that the same were withdrawn as not proper for their consideration: *Held*, that the remarks were not a ground of reversal, as they could not have injured the defendant.

13.   While it is the duty of the trial judge to see. that the line of argument is kept within reasonable bounds, and not to allow a defendant to be convicted or prejudiced on account of real or imaginary crimes for which he is not upon trial, at the same time unreasonable restrictions must not be placed upon a legitimate presentation of the evidence. Comments upon testimony, and the statement of fair inferences from proven facts, come within the province of a just and lawful prosecution.

14.   SAME—*argument of counsel—reading from text books.* Where the defendant's counsel, in his argument to the jury in a criminal case, reads from and comments upon authorities, as, text books and reports,

the counsel for the prosecution may answer the propositions of law made, by reading what another author has said in answer to such view of the same proposition.

15. IMPEACHING VERDICT—*affidavits of jurymen.* Affidavits of jurymen, or affidavits as to statements made by jurors, will not be received to impeach their verdict.

WRIT OF ERROR to the Circuit Court of Lawrence county; the Hon. C. C. BOGGS, Judge, presiding.

Mr. E. CALLAHAN, for the plaintiff in error:

The indictment was bad in not alleging that Bopp was a human being, in the language of the statute defining murder.

There is no allegation of time and place when "a certain revolver" was "loaded with gunpowder and leaden bullets." All the approved precedents have the words "then and there" before the word "loaded." There is no allegation of time or place to the allegation, "and by thus striking the said George Bopp with one leaden bullet," nor the allegation, "inflicting on and in the right side of him," etc., "one mortal wound;" The allegation of time and place "then and there," should be repeated to every material fact issuable or triable. 10 Am. and Eng. Ency. of Law, 587, 588; 1 Chitty on Crim. Law, 198, 218, 220; *Jackson* v. *People,* 18 Ill. 270; *Nicholson* v. *State,* 18 Ala. 520; Wharton on Crim. Law, secs. 261, 272; 1 Bishop on Crim. Proc. secs. 258, 259, 260.

In an indictment for murder by shooting, the striking must be expressly laid. 2 Bishop on Crim. Proc. sec. 519; 1 Wharton on Crim. Law, sec. 1067.

An indictment for murder must allege that the person alleged to have been murdered, died of the mortal wound alleged to have been given by the person indicted. *Fairlee* v. *People,* 11 Ill. 1; *Jackson* v. *People,* 18 id. 269; Wharton on Crim. Law, sec. 285.

The death by the means stated should be positively alleged, for it can not be averred by implication. If, therefore, it be stated that the death was caused by any stroke, the indict-

ment should proceed to aver that the prisoner thereby gave to the deceased a mortal wound or bruise whereof he died. 1 Russell on Crimes, 560, 561; 2 Hale's Pleas of the Crown, 186.

It is necessary that the charge of murder be expressly made by the grand jury, on their oaths as jurors. 1 Wharton's Precedents, 114-185; 2 Bishop on Crim. Proc. sec. 537.

The ninth and tenth instructions for the People needlessly refer to the charge of bastardy, and the complaint therein. The trial judge should see that the line of argument is kept within reasonable bounds, and not allow the defendant to be convicted or prejudiced on account of real or imaginary crimes. *Bulliner* v. *People*, 95 Ill. 405; *Hennies* v. *Vogel*, 87 id. 242; *Yeo* v. *People*, 49 id. 412.

Statements of prejudicial facts not in evidence are cause for new trial, unless cured. Thompson on Trial, sec. 963. That it was not cured, see note 3.

The court erred in allowing counsel for the People, in his closing remarks, to read authorities which had not been before that time cited. Moore on Crim. Law, secs. 946, 947 a.

The evidence of Thackery should not have gone to the jury, and was not sufficient, if admissible, to base an instruction on it.

Mr. GEORGE HUNT, Attorney General, and Mr. S. J. GEE, State's Attorney, for the People:

The language of the indictment, and the name applied to the deceased, are always employed to describe human beings. *Stanley* v. *State*, 33 Iowa, 526; *Merrick* v. *State*, 63 Ind. 327; 9 Am. and Eng. Ency. of Law, 638; 2 Bishop on Crim. Proc. (3d ed.) 506.

Where one fact is alleged in an indictment, with time and place, the words "then and there," subsequently used as to the occurrence of another fact, refer to the same point of time, and necessarily import that the two were co-existent. *State* v. *Hurley*, 71 Me. 354; 10 Am. and Eng. Ency. of Law, 588.

When time and place have once been alleged in an indict-ment, the words "then and there" need not be used in every material allegation. *Turpin* v. *State*, 80 Ind. 148; *Fish* v. *State*, 9 Neb. 62; *Commonwealth* v. *Keyon*, 83 Mass. 6.

The omission of the words "then and there" is immaterial. *State* v. *Willis*, 78 Me. 70; *Commonwealth* v. *Langley*, 80 Mass. 21; *State* v. *Merchant*, 15 R. I. 539; *State* v. *Doyle*, id. 527; *State* v. *Sparron*, 2 Taylor, 93.

Any appropriate method of setting out the respective dates of striking and death is good. 2 Bishop on Crim. Proc. (3d ed.) sec. 528; Bishop's Directions and Forms, sec. 520; *State* v. *Conley*, 39 Me. 78; *Beasley* v. *People*, 89 Ill. 571; *State* v. *Haney*, 67 N. C. 567; *Mayes* v. *People*, 106 Ill. 306; 9 Am. and Eng. Ency. of Law, 636.

The court used its judicial discretion, and no harm can be presumed to have occurred to defendant. It must appear that except for the improper remarks of counsel no conviction would have occurred, or that the jury were unduly prejudiced. A fair consideration of this evidence can lead to no such conclusion. The verdict is fully justified, and where the evidence of guilt is strong and satisfactory, the judgment will not be reversed for mere improper remarks of counsel for the People tending to prejudice the jury against the defendant. *Duffin* v. *People*, 107 Ill. 124; *Garrity* v. *People*, 115 id. 420; *Spies* v. *People*, 122 id. 1.

Evidence of threats is competent to show intent and motive. This threat was against one of a class—constables. Wharton on Crim. Evidence, sec. 756.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is an indictment against the plaintiff in error for murder. The jury found him guilty of manslaughter and fixed his punishment at imprisonment in the penitentiary for twenty years. After overruling motions for new trial and in arrest

of judgment, the court gave sentence and judgment upon the verdict. The indictment consisted of three counts. The first and third counts were quashed on motion of the defendant, but the motion to quash was overruled as to the second count, and exception taken.

The first objection made to the second count of the indictment, as set forth in the motions to quash and in arrest, is that it contains no allegation that George Bopp, alleged to have been killed by the defendant, was a human being. This allegation is said to be necessary because section 140 of the Criminal Code defines murder to be "the unlawful killing of a *human being* in the peace of the people, with malice aforethought, either express or implied." It need not be averred, that the deceased was a human being. The name imports a human being. The language of the indictment, and the name applied to the deceased, are always used to describe human beings. (*State* v. *Stanley*, 33 Iowa, 526; *Merrick* v. *State*, 63 Ind. 327; 9 Am. and Eng. Ency. of Law, page 638, and cases referred to in note 9.)

We think that the allegation of time and place, as expressed by the words, "then and there," is sufficiently repeated to every material fact set up in the count. The rule is, that, where one fact is alleged in the indictment with time and place, the words, "then and there," subsequently used as to the occurrence of another fact, refer to the same point of time and necessarily import that the two were co-existent. (*State* v. *Hurley*, 71 Me. 354; 10 Am. & Eng. Enc. of Law, p. 588.)

Certain language in the count is said to contain no allegation that the deceased was struck with or by the leaden bullet therein referred to, and is objected to on that account. The language thus complained of is as follows: "and the said Thomas Palmer with a certain revolver loaded with gunpowder and leaden bullets, which he, the said Thomas Palmer, then and there held in his hand, he, the said Thomas Palmer, did then and there feloniously, unlawfully, wilfully, and of

his malice aforethought, shoot off and discharge at and upon the said George Bopp, thereby and by thus striking the said George Bopp with one leaden bullet thus discharged from the revolver in the hand of the said Thomas Palmer inflicting on and in the right side of him, the said George Bopp, one mortal wound," etc. The plain meaning of these words is that the said George Bopp was struck with the bullet discharged from the revolver. "No particular word or phrase need show the manner and means of death, if such fact is made plainly to appear." (9 Am. & Eng. Enc. of Law, page 631.)

The mortal wound was given one day, and the deceased languished or grew weaker until the next day, and died. It is clear, that he died of the mortal wound given of which he languished to death. The respective dates of the stroke and of the death are sufficiently stated. (*Lutz* v. *The Commonwealth,* 29 Penn. St. 441; Bishop's Criminal Procedure, Vol. 2, sec. 528; Bishop's Directions and Forms, sec. 520; *State* v. *Conley,* 39 Me. 78; *State* v. *Haney,* 67 N. C. 467; Am. & Eng. Enc. of Law, Vol. 9, page 636.)

The second count closes as follows: "And so the said Thomas Palmer did in the manner and form aforesaid feloniously, unlawfully, wilfully and of his malice aforethought the said George Bopp kill and murder contrary to the form of the statute," etc. It is claimed that this conclusion is erroneous, because it does not begin as follows: "And so the Grand Jurors aforesaid upon their oaths aforesaid do say that the said Thomas Palmer did," etc. The omitted words appear at the beginning of the count, and their repetition at the conclusion was not necessary. (See form on page 284 of Bishop's Directions and Forms.)

It is alleged that the evidence does not sustain the verdict. After a careful examination of all the testimony, we see nothing to indicate that the jury was influenced by prejudice or passion. A warrant had been issued by a justice of the peace for the arrest of the defendant upon a charge of bastardy and

placed in the hands of the deceased, who was a constable. It was proven, that the defendant expected such a warrant to be issued, and armed himself for the announced purpose of resisting arrest.    The deceased, who went to the house where the defendant lived for the purpose of arresting him, found him absent, and was told that he had gone to Kansas, when in fact he was in attendance upon a meeting at a school house located a short distance from his home.    While the deceased was searching for him, a member of the family ran to the school-house and warned him that the constable was in search of him.    The defendant, being thus warned, left the school house, and was met on the road by George Bopp, the deceased, who, as a constable and under the authority of the writ, attempted to make the arrest.    Thereupon, the defendant drew a pistol and fired a bullet into the body of the constable, and killed him.    We are unable to say that the evidence does not sustain the verdict.    It so far tends to show the guilt of the defendant, that we would not be justified in setting aside the verdict upon the questions of fact involved.

It is said that the court erred in allowing the evidence of one Thackery to go to the jury.    Thackery swore that, on the evening of December 24, 1889, two days before Bopp was shot, he went out into the road with the defendant from an entertainment they were attending, when they passed one Newman, who had been a constable; that, upon seeing Newman, the defendant remarked: "Newman aims to arrest me.   *   *   * Yes, I believe he is going to arrest me;" that defendant then pulled a revolver from his "hip-pocket" and said: "If he tries to arrest me, he will hear from this;" that defendant then put the revolver in his pocket, and said that "he had got into trouble with a girl, and was going to leave the next evening." It is proven, that the defendant did leave the State of Illinois after killing Bopp, and was found in Missouri bearing an assumed name, and was brought back to this State upon a requisition.    Before Thackery testified, the warrant referred

to had been introduced in evidence. The warrant is as follows: "The People of the State of Illinois, To the Sheriff or any constable of said county: Whereas Clara J. Lee of Lawrence County, Ills., an unmarried woman, has this day made complaint under oath before H. W. Bunn, a justice of the peace in and for said county, that she is pregnant with child, which is liable to be born a bastard, and Thomas E. Palmer is the father of said child. We therefore command you to arrest the said Thos. E. Palmer, and bring him before said justice to answer unto said complaint, and to be further dealt with according to law. Given under my hand and seal of said justice this 26th day of Dec. 1889.                    H. W. BUNN."

The testimony of Thackery was objected to as being irrelevant to the issues; and the warrant was objected to upon the ground that it was not under the seal of the magistrate.

It was proper to introduce the warrant, in order to show why the deceased put his hand upon, or attempted to put his hand upon, the defendant. It was the theory of the defense, that the defendant fired his pistol in self-defense, and in resistance to a supposed hostile movement of the deceased when the latter stretched out his arm. It was proper to show that Bopp's movement toward the defendant was made for a lawful purpose, and under authority of a writ, which, though technically defective in the matter of a seal, was supposed by him to confer the right to make the arrest.

The evidence of Thackery was properly admitted. It tended to show the malice of the defendant, not perhaps towards Bopp individually, but towards any officer of the law who should attempt to arrest him. The words which he addressed to Thackery, taken in connection with his exhibition of a deadly weapon, showed his animus, and also tended to show a premeditated design to make resistance to the arrest which he expected, and of which he afterwards received warning at the school house just before meeting the constable.

Plaintiff in error makes objection to the ninth, tenth and thirteenth instructions given for the people, because they refer to the charge of bastardy. We see no error in these instructions. They told the jury in substance, that, if they believed, from the evidence beyond a reasonable doubt, that Bopp, acting as a constable, undertook to arrest the defendant in pursuance of a warrant on a charge of bastardy, and that the defendant prior to the killing had formed a malicious intention to resist and kill any officer who should attempt to arrest him on that charge, and knew and believed that Bopp only intended to arrest him and carry him before a justice to answer to the complaint made against him, and that he shot and killed Bopp in resistance to said arrest and not in self defense, then such killing would be murder, notwithstanding the fact that the warrant was illegal in having no seal.

The instructions thus given for the People could have done the defendant no harm, in view of the following instructions, which, whether they were in all respects correct or not, were given for him at his own request:

15. "Under the law a warrant for the arrest of a person charged with bastardy must be under the hand and seal of the magistrate who issues such warrant. If the evidence in this case shows that George Bopp was killed while attempting to arrest the defendant by virtue of a bastardy warrant, which was not under the seal of the magistrate who issued the warrant, in contemplation of law he had no warrant at all."

18. "A man is not bound to submit to an unlawful arrest. He may stand his ground and repel force by force, taking care that the force he employs does not exceed the bounds of mere defense and prevention, and that it does not become erroneously disproportionate to the injury threatened."

11. "If an officer, in attempting to make an arrest under a void warrant, makes an assault upon the party sought to be arrested, in such a manner as would indicate to a reasonable person an intention to take life or do great bodily harm, the

person assaulted, if he in good faith acts under the influence of an actual fear that he is about to lose his life or receive great bodily harm, may resist with such force or weapons as may be available to him at the time."

Plaintiff in error complains, that the court refused to instruct the jury, that they should not consider a threat made to Thackery against Newman, unless the evidence showed that such threat was communicated or known to Bopp. There was no error in such refusal. The threat was not so much against Newman as against any officer who should attempt to make the arrest, and it tended to show malice and evil intention on his part, and to give character to his act in shooting the deceased, whether the latter knew of his remarks to Thackery or not. There is no question about the fact that the killing was done by the defendant. He admits in his testimony that he killed Bopp.

The second of defendant's refused instructions was properly refused, because it assumes the warrant to be valid when he had just asked several instructions to the effect that it was invalid, and because it assumes that Bopp used deadly weapons in making the arrest, when the defendant himself in his own testimony does not say that Bopp had any weapon in his hand when he stretched out his arm to make the arrest, and because all that was material in the refused instruction was contained in the sixth instruction given for the defendant.

The refusal of the second of defendant's refused instructions upon the subject of reasonable doubt could have done the defendant no harm, as, in the tenth and twenty fourth instructions given for the defendant, reasonable doubt was correctly defined in language which has been several times approved by this court. (*Vide Dunn* v. *People*, 109 Ill. 635, and cases there cited.)

We cannot see that the closing remarks of the State's Attorney could have injured the defendant in view of the fact, that, when the defendant excepted to them, the court directed

counsel to confine his remarks to the record, and charged the jury that it was their duty to give no consideration whatever to such remarks, and that the same were withdrawn from them as not being proper for their consideration.   The remarks objected to had reference to the charge of bastardy made against defendant.   The fact of such charge was not first brought to the notice of the jury by the address of counsel.   It was already in evidence, because it was a part of the warrant that had been introduced, and the subject was before the minds of the jury from the very necessities of the case, if counsel had made no reference to it.   The defendant himself referred to the "bastardy" warrant in the 15th instruction given for him, as above quoted.   Moreover, the evidence showed defendant's own admission, that "he had got into trouble with a girl, and was going to leave" the State.   While it is the duty of the trial judge to see, that the line of argument is kept within reasonable bounds, and not to allow the defendant to be convicted or prejudiced on account of real or imaginary crimes for which he is not upon trial, at the same time unreasonable restrictions must not be placed upon a legitimate presentation of the evidence.   Comment upon testimony and the statement of fair inferences from proven facts come within the province of a just and lawful prosecution.

The reference to authorities by the counsel for the prosecution in his closing address was merely to the comments made by such authorities upon the decisions of courts and the texts of authors, which had been previously read by defendant's counsel.   No new propositions of law were presented to the jury. If the defendant's counsel read one view of a proposition of law to the jury from one author, counsel for the prosecution did not go beyond the proper limits if, instead of attempting to answer the proposition in his own language, he merely read what another author had said in answer to such view of the same proposition.

It is insisted, that a new trial should have been granted by reason of the statements made in certain affidavits filed in support of the motion for a new trial. These affidavits seek to show that the jury arrived at the period of punishment by a resort to chance. If the statements in the affidavits were competent to impeach the verdict, the affidavits do not sustain the charge. A paper with figures upon it was picked up in the jury room after the verdict was rendered. One Sage made affidavit that M. A. Propes, one of the jurymen, told him that each juror put down the number of years he was in favor of, and that all the numbers were added together and divided by 12, leaving a quotient of 20. Propes files an affidavit denying that the verdict was brought about in any such way, and saying that the term was fixed, as the result of judgment and deliberation by all the jurors. Several other jurors make affidavits to the same effect. The only other affidavit, making the same statement as that made by Sage, is that of one Kitchen, who swore that he heard two of the jurymen say what Propes is alleged to have said, but Kitchen afterwards makes another affidavit substantially retracting what he had first sworn to, and saying that he was not positive about his former statements, and that his recollection was not clear. But we have held in a number of cases, that affidavits of jurymen will not be received to impeach their verdict. (*Martin* v. *Ehrenfels,* 24 Ill. 187; *Reins* v. *People,* 30 id. 256; *Reed* v. *Thompson,* 88 id. 245; *Cummins* v. *Crawford,* 88 id. 312.) Nor will affidavits as to statements made by jurymen be received to impeach their verdict. (*Allison* v. *The People,* 45 Ill. 37; *Niccolls* v. *Foster,* 89 id. 386.)

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*