[No. 1859]

STATE OF NEVADA, RESPONDENT, *v.* C. C. PETTY,
APPELLANT.

1. CRIMINAL LAW—COMPELLING ACCUSED TO TESTIFY AGAINST HIMSELF—
   PHYSICAL EXAMINATION.
   Where the defense in a homicide case was sadistic insanity, and
   accused was examined by a physician for the purpose of testifying
   for accused as to his physical condition as bearing upon the question
   of insanity, accused's examination upon an order of court by physi-
   cians appointed by it upon the state's request to enable them to
   testify as to the same facts did not compel accused to become a wit-
   ness against himself contrary to article 1, section 8, of the constitution.

2. HOMICIDE—EVIDENCE ADMISSIBLE FOR PARTICULAR PURPOSE.
   Where, in a prosecution for uxoricide, in which the defense was
   sadistic insanity, accused's medical witness testified as to the condi-
   tions of accused's heart and genital organs, and did not state until
   cross-examination that he did not base his conclusions upon the con-
   dition of the heart and genital organs, the state could introduce
   evidence of the condition of such organs; and hence an objection as to
   its propriety as impeaching testimony was not well taken.

3. CRIMINAL LAW—ADMISSION OF EVIDENCE—SIMILAR EVIDENCE BY ADVERSE
   PARTY.
   The overruling of an objection to the state's medical testimony as
   to the condition of accused's heart and genital organs, given in con-
   nection with testimony on the concededly material questions of the
   condition of his head, etc., on the ground that it was immaterial, was
   not error, unless accused withdrew or struck the testimony offered by
   himself on the condition of such organs.

4. WORDS AND PHRASES—"SADISM."
   Sadism is a mental disease in which the sexual instinct is abnormal
   or perverted.

5. CRIMINAL LAW—TRIAL—IMPROPER ARGUMENT—ACTION OF COURT.
   In a prosecution for uxoricide, in which the defense was sadistic
   insanity, in objecting to accused's medical witness detailing state-
   ments made by accused during a physical examination of him before
   trial by the witness, the state's attorney stated that he objected to a
   conversation occurring in a jail three or four days before trial, as it
   was highly improper, and no doubt was manufactured for the physi-
   cian's benefit, and that he knew there were eye witnesses to the kill-
   ing, and that a legitimate defense of insanity would not avail accused.
   *Held*, that striking out such remarks and instructing the jury to dis-
   regard them cured any injury that might have resulted therefrom, they
   being merely the expression of the state's attorney's opinion.

Argument for Appellant

6. CRIMINAL LAW—APPEAL—HARMLESS ERROR.
> An assertion by an attorney in argument, either directly or by innuendo, of the existence of a fact tending to prejudice the jury against accused, when such fact is not in evidence, is generally held prejudicial.

7. CRIMINAL LAW—TRIAL—ARGUMENT—ACTION OF COURT.
> The limits of arguments before a jury is necessarily a matter for the trial court's discretion, and an instruction to disregard improper argument will be held not to cure such argument only where the remarks are clearly prejudicial.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *John S. Orr,* Judge.

C. C. Petty was convicted of murder in the first degree, and appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*F. B. Mayers,* for Appellant:

I.   The remark of the assistant district attorney was as follows: "But I do object to his stating a conversation that occurred three or four days ago in the jail down here just before this trial commenced, as it is highly improper, and may be, and no doubt is, and was, manufactured for the doctor's benefit," made before the jury in the course of the trial.  The remark of the district attorney was as follows: "He knew that there were eye witnesses to the killing that night, and that thereby an endeavor to establish an alibi would be futile. And he knew, also, gentlemen, that a legitimate defense of insanity would not avail him anything in this case," made before the jury in his argument.   Both of these remarks were certainly prejudicial to the defendant.   The defense interposed was rather a peculiar one, sadistic insanity, and one which few, outside the medical profession, know exists.   Sadism is a mental disease in which the sexual instinct is abnormal or perverted, and the one afflicted, in the grasp of sexual frenzy, will tear, bite, scratch and often kill the object of his desire, and upon recovering from the paroxysm have no recollection of his acts.

II.   "No person shall be compelled in any criminal case to be a witness against himself." (Const. of Nev., sec. 8; Const.

of U. S., amend. 5.) The defendant was forced to submit to a physical examination for the purpose of supplying the prosecution with evidence and testimony with which to rebut the testimony of Doctor Hepner. This was done after the case for the prosecution and defense was in and during rebuttal, and not for the purpose of rebutting any statement of the defendant. This was a violation of his constitutional privilege, and made him a witness against himself. (*State* v. *Jacobs*, 50 N. C. 259; *Blackwell* v. *State*, 44 Am. Rep. 717; *Stokes* v. *State*, 30 Am. Rep. 75; *People* v. *Wolcott*, 51 Mich. 612; *Cooper* v. *State*, 4 L. R. A. 766; *People* v. *McCoy*, 45 How. Prac. 216; *Emery's Case*, 9 Am. Rep. 22.)

III. Only in matters relevant to the issue can a witness be contradicted for the purpose of impeachment. (*Louisville Jeans Clothing Co.* v. *Lichkoff*, 19 South. 436; *McDonald* v. *Hooker*, 23 S. W. 679; *Mullin* v. *McKim*, 45 Pac. 416; *Hanchett* v. *Kimbark*, 2 N. E. 512; *Eikenberry et al.* v. *Edwards*, 24 N. W. 570.)

*R. C. Stoddard,* Attorney-General, *L. B. Fowler,* Deputy Attorney-General, *W. Woodburn, Jr.,* District Attorney, *M. B. Moore,* Assistant District Attorney, for Respondent:

I. Appellant raises the point of misconduct on the part of the district attorney and the assistant district attorney. The court ordered and instructed the jury to disregard the remarks, but appellant contends that this did not cure the error. A conviction will not be reversed because of improper remarks made by the prosecuting attorney, where the court instructs the jury to disregard them. (*People* v. *Pope*, 108 Mich. 361; *Palmer* v. *People*, 138 Ill. 356; *Grubb* v. *State*, 117 Ind. 277; *State* v. *Brown*, 12 Minn. 538; *State* v. *Hack*, 118 Mo. 92; *State* v. *Kilgore*, 93 N. C. 533; *McGill* v. *State*, 25 Tex. App. 499; *Patrick* v. *State*, 33 S. W. 1078; *Bradshaw* v. *People*, 153 Ill. 156; *McDonel* v. *State*, 90 Ind. 320; *Zimmerman* v. *State*, 31 N. E. 550; *People* v. *Pernman*, 72 Mich. 184; *State* v. *Howard*, 118 Mo. 127; *State* v. *Taylor*, 134 Mo. 109; *People* v. *Owens*, 132 Cal. 471; *People* v. *Matthews*, 139 Cal. 528.)

II. The one remaining point urged by the appellant we do not deem consequential. His own statement of his point is

very satisfactory to respondent.   If three doctors put on the stand by the state testified to immaterial matters, we fail to understand how this immaterial testimony could have injured appellant or injured the testimony of Doctor Hepner.   If, on the other hand, it was material for the appellant, at the trial of his case, to have Doctor Hepner testify as to sadistic insanity, its causes or probable causes, and then to testify to abnormal sexual condition of the appellant, which might form the basis for sadistic insanity, then it was material and highly important that the state should overcome any possible impression this may have had on the jury, by proving the nonexistence of such conditions.   If there is a conflict between what Dr. Hepner said on direct examination and what he said on cross-examination, this does not change the fact that the jury might have accepted his testimony on direct examination and have been governed by it, and the state was properly allowed to meet this situation.

By the Court, NORCROSS, C. J.:

On the 9th day of March, 1909, upon a public street in the Town of Sparks, Washoe County, defendant killed his wife, May Petty, by shooting her five times with a pistol.   He was indicted for this uxoricide, and upon trial a verdict was returned of murder in the first degree, with punishment fixed at death.   Judgment was entered in accordance with the verdict.   From the judgment and from an order denying defendant's motion for a new trial, defendant has appealed.

Upon the trial defendant relied upon the defense of sadistic insanity.   In support of this defense, the defendant went upon the stand and testified in his own behalf.   He also called as a witness Dr. A. H. Hepner, who qualified as an expert, and testified, among other things, to having made a physical examination of the defendant prior to the trial, and detailed certain physical conditions existing in the defendant, which, in part, formed a basis for his opinion that at the time of the killing the defendant was insane.

For the purposes of rebuttal, counsel for the state requested the court to appoint three physicians and to order that the defendant be submitted to an examination by them relative

to the physical conditions detailed in the testimony of Dr. Hepner. Over the objection of counsel for defendant, the order as requested was made, and the following-named physicians were appointed by the court for the purpose of making the examination: Dr. B. F. Cunningham, Dr. W. H. Hood, and Dr. L. T. Ritchie. The examination was made in a suitable room in the county jail in the presence of counsel for the state and for the defendant. Each of the said physicians so appointed by the court subsequently, upon rebuttal and over the objection of defendant, testified to the facts disclosed by their examination of the person of defendant within the limits specified in the order of the court. Exceptions to the order directing the examination, and to the testimony of the appointed physicians, were based upon the contention that the constitutional guaranty that no person shall be compelled, "in any criminal case, to be a witness against himself," was violated. (Const. Nev. art. 1, sec. 8.) We think the court did not err in the order or in the admission of the testimony.

Considering this constitutional provision, this court by Hawley, J., in *State* v. *Ah Chuey*, 14 Nev. 83, 33 Am. Rep. 530, said: "The constitution means just what a fair and reasonable interpretation of its language imports. No person shall be compelled to be a witness—that is, to testify—against himself. To use the common phrase, it 'closes the mouth' of the prisoner. A defendant in a criminal case cannot be compelled to give evidence under oath or affirmation or make any statement for the purpose of proving or disproving any question at issue before any tribunal, court, judge, or magistrate. This is the shield under which he is protected by the strong arm of the law, and this protection was given, not for the purpose of evading the truth, but, as before stated, for the reason that in the sound judgment of the men who framed the constitution it was thought that, owing to the weakness of human nature and the various motives that actuate mankind, a defendant accused of crime might be tempted to give testimony against himself that was not true. * * * From whatever standpoint this question can be considered, the truth forces itself upon my mind that no evidence of physical facts can be upon any established principle of law, or upon any

substantial reason, be held to come within the letter or spirit of the constitution. The question of whether or not the court erred in compelling the defendant, Ah Chuey, to exhibit his arm must, in my opinion, be determined upon other grounds. Was the defendant compelled to exhibit himself in such a manner as to unjustly or improperly prejudice his case before the jury? Did the act in question have a tendency to degrade, humiliate, insult, or disgrace the defendant? Did the judge, by the act in question, convey to the jury the idea that he believed the defendant to be guilty of the offense charged against him? If either of these questions ought to be answered in the affirmative, then I think the defendant should be granted a new trial. A defendant in a criminal case is entitled to a fair and impartial trial, free from insult or obloquy. and courts cannot be too particular in guarding his personal rights and privileges. He should never be compelled to make any indecent or offensive exhibition of his person for any purpose whatever. The judge presiding at the trial should not express any opinion upon the facts (*State* v. *Tickel*, 13 Nev. 502, and the authorities there cited), or compel the defendant to do any act which would clearly convey to the jury an intimation that the defendant was guilty of the offense charged, or to exhibit himself in such a manner as to prejudice his case before the jury."

While this opinion was rendered more than thirty years ago, it is recognized as a leading case construing this provision which exists in most of the state constitutions and in the federal constitution. Not all of the authorities are in harmony with the Ah Chuey case, but the weight of authority is. The reasons supporting the conclusions reached in that case are convincing, and need' not be repeated here. In this case the defendant had interposed the defense of insanity, had offered himself as a witness solely in support of this defense, had been physically examined by a physician for the purpose of enabling such physician to testify concerning his physical condition as bearing on his alleged insanity, and such physician had testified in regard thereto. He could not therefore interpose any legal objection to the state having the benefit of the same character of expert examination which he had

through the testimony of his physician submitted to the jury. The recent case of *People* v. *Furlong*, 187 N. Y. 198, 79 N. E. 978, presents a situation somewhat similar to that here involved. We quote from the opinion the following: "The only exceptions taken by the defendant that are urged before us relate to the examination of the defendant by Dr. Flint during one of the adjournments of the court, while the defendant was on trial, and also to the subsequent testimony of Dr. Flint, in which he related to the jury the conversation which he had with the defendant, and described what he found upon a physical examination. It is claimed in behalf of the defendant that such examination was obtained by entrapping the defendant, and that it was generally unfair and prejudicial to him, and that he was thereby compelled to give testimony against himself in violation of his constitutional rights. * * * The defendant was distinctly told that he might decline to answer any questions that were put to him, and that anything that he said in answer to questions might be used against him. * * * The record does not disclose any justification for the claim that Dr. Flint was used to entrap the defendant into making a statement for use against him on the trial. There is no denial of the testimony that Dr. Flint examined the defendant after being told that it was requested by the court, and that the examination was made without the knowledge or presence of either counsel. We are not to pass upon the question whether due courtesy was shown to the counsel engaged in the trial in holding the examination without notifying them. * * * The statement made to Dr. Flint was not within the constitutional prohibition against compelling a defendant to give testimony against himself. (*People* v. *Truck*, 170 N. Y. 203, 63 N. E. 281; *People* v. *Gardner*, 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741; *People* v. *Van Wormer*, 175 N. Y. 188, 67 N. E. 299; *People* v. *Adams*, 85 App. Div. 390, 83 N. Y. Supp. 481, affirmed 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675, affirmed *Adams* v. *New York*, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; *People* v. *Mills*, 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131.)" See, also, *State* v. *Tettaton*, 159 Mo. 354, 60 S. W. 743; *O'Brien* v. *State*, 125 Ind. 38, 25 N. E.

137, 9 L. R. A. 323; *Gordon* v. *State,* 68 Ga. 814; *Common-wealth* v. *Buccieri,* 153 Pa. 550, 26 Atl. 228; *People* v. *Hock,* 150 N. Y. 303, 44 N. E. 976.

Counsel for appellant further contends that it was error to order the examination of defendant's person or to permit the physicians appointed by the court to testify to facts disclosed by such examination, for the reason that the purpose of such examination was to contradict the witness Dr. Hepner for purposes of impeachment, and, as Dr. Hepner had, upon cross-examination, testified that he had not based his opinion on the physical symptoms of defendant testified to by him, "except the typical degeneracy written on his face and head," his testimony relative to defendant's heart and genitals was as to an immaterial matter, and hence could not be contradicted for purposes of impeachment. We do not think the testimony of the physicians appointed by the court can be regarded solely in the light of impeaching evidence. Dr. Hepner had testified at length as to the condition of defendant's heart and genital organs, and it was not until cross-examination that he stated that he did not take into consideration the condition of these organs in reaching his conclusions as to defendant's mental condition. Counsel for defendant never withdrew this portion of Dr. Hepner's testimony from the case or offered to have it stricken out. It was all included in the hypothetical question propounded to the witness by defendant's counsel.

Sadism is a mental disease in which the sexual instinct is abnormal or perverted. Where this character of insanity is relied on, the physical facts, now claimed to be immaterial, would very naturally be given some weight by the jury in defendant's favor where it was shown by uncontradicted testi-mony that they were abnormal. The testimony of Dr. Hepner was that defendant's heart and genital organs were abnormal, while that of the physicians appointed by the court was that they were normal. The court in ordering the physical exami-nation of defendant was careful to limit it to the points testi-fied to by defendant's own expert. If counsel for defendant deemed these physical facts immaterial, he should not have offered testimony concerning them, but, having offered testi-mony of the existence of certain physical characteristics of

defendant, he was not in position to object to the state offering testimony in reference to the same physical facts, and, as before stated, such testimony could hardly be held to be governed by the rules relating to impeaching testimony. At the time the order was made, it could not be told whether the investigations of the physicians appointed by the court would confirm the testimony of Dr. Hepner or not. The purpose of making the order was to enable the court to arrive, if possible, at the truth of the existence or nonexistence of certain physical facts, which the defendant had introduced into the case in his defense, and not to impeach the defendant's witness. The mere fact that one expert witness may reach a conclusion different from that of another expert witness does not of itself impeach the former witness. In any event the physical examination of the defendant went to all the points testified to by Dr. Hepner which he found as a result of his examination, all of which were considered by him in reaching his conclusion that the defendant was insane at the time of the homicide, with the exception of those above mentioned.

The objection to the testimony of the physicians appointed by the court was general, and went to all of their testimony, without specifying any certain portion thereof that was claimed to be immaterial. The examination also went to the head, including the mouth, teeth, and tongue, of the defendant, which are conceded to be material points. No specific objection to the testimony relative to the other alleged immaterial points was ever made. If such objection had been made, its overruling could not, we think, constitute prejudicial error, unless defendant withdrew or caused to be stricken out the testimony offered in his behalf concerning the same facts.

Counsel for appellant also contends that prejudicial error was committed because of certain remarks of the deputy district attorney embraced in an objection to certain testimony offered upon the part of the defendant, and because of certain remarks of the district attorney during his argument to the jury. During the progress of the examination of Dr. Hepner by defendant's counsel, the witness was asked to describe his examination of the person of the defendant made prior to the trial, and to detail statements made by the defendant during

such examination.   To the witness detailing these statements
objection was interposed by the deputy district attorney, and
as a part of such objection he said: "But I do object to his
stating a conversation that occurred three or four days ago in
the jail down here just before this trial commenced, as it is
highly improper, and may be, and no doubt is, and was, man-
ufactured for the doctor's benefit." During the course of his
argument to the jury, the district attorney made the following
remark: "He knew that there were eye witnesses to the killing
that night, and that thereby an endeavor to establish an alibi
would be futile.   And he knew also, gentlemen, that a legiti-
mate defense of insanity would not avail him anything in this
case."

Both these remarks were but the expression of the opinion
of the state's attorney, and, conceding that they were
improper, we think the order of the court striking them out
and instructing the jury to disregard them obviated any
injury that might possibly otherwise have been done the
defendant.   Counsel during the heat of a trial occasionally
express opinions and make unwarranted statements, but the
courts generally hold that these statements are not sufficient
to warrant a new trial where they are either withdrawn or
ordered stricken out, as was the case here, and the jury
directed to disregard them.   Where an attorney asserts either
directly or by innuendo the existence of a fact that would
tend to prejudice the minds of the jury against the defendant,
and there is nothing in the evidence tending to establish the
existence of such fact, courts generally hold such statement to
be prejudicial, and the striking of it out and the instruction
to disregard it may not be held to cure it.   Such a situation
is illustrated in the case of *State* v. *Rodriquez*, 31 Nev. 342,
recently decided by this court—a case in which the judgment
of conviction was reversed for remarks of the district attorney
which were held not to have been cured by the order and
instruction of the court.   The limits which counsel may go
in addressing a jury or in the conduct of a case must neces-
sarily be left to the discretion of the trial court, and it is only
in cases where remarks are clearly prejudicial that an instruc-
tion to disregard will be held not to cure.   No hard and fast

rule can be laid down, and each breach of professional propriety must be determined upon the particular facts of the particular case.

Courts have frequently been called upon to reverse cases because of the remark of the attorneys for the prosecution, who through a misguided zeal appear to have forgotten that they owe a duty to the defendant as well as to the state. This case, however, does not present a situation of this kind, and we think it clearly falls within that class of cases where the error if any is cured by the action of the court. (*Sawyer* v. *United States*, 202 U. S. 150, 26 Sup. Ct. 575, 50 L. Ed. 972; *State* v. *Simpson*, 32 Nev. 138; *People* v. *Owens*, 132 Cal. 471, 64 Pac. 770; *People* v. *Pope*, 108 Mich. 361, 66 N. W. 213; *Palmer* v. *People*, 138 Ill. 356, 28 N. E. 130, 32 Am. St. Rep. 146; *Grubb* v. *State*, 117 Ind. 277, 20 N. E. 257, 725; *People* v. *Smith*, 180 N. Y. 125, 72 N. E. 931; *People* v. *Matthews*, 139 Cal. 528, 73 Pac. 416.)

The judgment and order denying the motion for a new trial are affirmed, and the district court is directed to fix a time and make all necessary and proper orders for having its sentence carried into effect by the warden of the state prison.