## TONA BONARDO *et al.*

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1899—Rehearing denied December 13, 1899.*

1. CRIMINAL LAW—*what will show which of several persons inflicted wound.* The evidence shows that a certain one of several persons who made an attack upon the deceased inflicted the fatal knife wound, when such person was the only one of the assailants shown to have been armed with a knife capable of making the wound.

2. SAME—*what evidence justifies verdict of manslaughter.* A verdict of manslaughter is justified by evidence that the accused participated in a deadly assault upon the deceased, and while striking the latter urged the others to "kill him."

3. SAME—*it is for the jury to deduce the truth from contradictory testimony.* In a murder trial, where the testimony of accused contradicts that of other witnesses, it is for the jury to determine where the truth lies.

4. SAME—*when question of malice or irresistible passion is for the jury.* It is for the jury to say whether, under the circumstances, a homicide was the result of an irresistible and violent impulse of passion, or whether the conduct of the accused was the result of malice and intent to commit murder, where he pursued and stabbed the deceased after the latter struck him and ran away.

5. SAME—*what is not such provocation as reduces homicide from murder to manslaughter.* The mere firing of a pistol in the neighborhood does not amount to that considerable provocation which the law recognizes as necessary to reduce the consequent killing of the party by the accused from murder to manslaughter.

6. SAME—*when homicide cannot be justified on ground of self-defense.* One who pursues and mortally stabs with a knife a person who struck him and then ran away cannot justify the homicide on the ground of self-defense.

7. NEW TRIAL—*affidavit that verdict was arrived at by chance must show source of affiant's belief.* An affidavit made by one convicted of crime, in support of his motion for a new trial, that the verdict in his case was arrived at by chance, although directly averred must be presumed to have been made upon information and belief, and therefore insufficient, when the source of the affiant's information is not shown.

8. TRIAL—*when remarks made by the State's attorney are not prejudicial.* Remarks made by the State's attorney in his closing address to the jury are not prejudicial, when, after objection to them was sustained by the court, the State's attorney withdrew them and

told the jury not to consider them, and the court instructed the jury to disregard statements not based on evidence.

9. SAME—*reading defendant's instructions between parts of People's is not reversible error*. That the judge read the instructions for the accused after reading part of the instructions for the People, and then gave the remainder of the People's instructions, although not good practice is not reversible error, where the instructions of the accused were read consecutively and without interruption. ·

10. SAME—*when accused cannot complain that he was not present at argument for new trial*. One convicted of murder cannot complain that he was not present during the argument for a new trial, made before the judge in chambers, when his absence was consented to by his counsel, and he was present later, when the motion was passed upon.

11. APPEALS AND ERRORS—*verdict will not be lightly disturbed upon the facts*. In absence of error of law a verdict in a criminal case will not be set aside, when evidently the result of a dispassionate consideration of all the evidence, by which it is manifestly authorized.

12. VARIANCE—*what is not a variance between allegation and proof— names*. There is not a variance between an indictment charging the defendant with the murder of John Young, Jr., and the proof, where most of the witnesses speak of the person killed as "Johnnie Young," as the court will take judicial notice that "Johnnie" is a nickname for "John," and the word "Junior" or "Jr." is a matter of description and not part of the name.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. A. K. VICKERS, Judge, presiding.

This is an indictment against plaintiffs in error for the murder of one John Young, Jr., on the 16th day of October, 1897. The indictment was found by the grand jury of Williamson county at the May term, 1898, of the circuit court of that county, and the trial was had at the September term, 1898, of said court. The jury found plaintiff in error, Tona Bonardo, guilty of murder, as charged in the indictment, and fixed his punishment at imprisonment in the penitentiary for twenty-five years; and found the plaintiff in error, George Colombo, guilty of manslaughter, and fixed his punishment at imprisonment in the penitentiary for two years. A motion for a new trial was made and overruled. Motion in arrest of judgment was also made and overruled. Judgment and

sentence were then pronounced in accordance with the verdict of the jury. The present writ of error is sued out for the purpose of reviewing said judgment.

Plaintiffs in error were coal miners; and, for some time prior to the killing of the deceased, were working in what are known as the "Brush mines," near Carterville in Williamson county. The coal company, for which they worked, had built houses for its employes near the coal shaft, and the name, given to the group of houses so built and occupied, is Greenville. Between the rows of houses, running east and west, is a public street sixty or seventy feet wide. On the evening of October 16, 1897, between eight and nine o'clock, plaintiffs in error were in one of the houses, called in the record "house No. 2," in company with quite a number of other persons, who, during the early part of the evening, had been drinking beer, and later in the evening were eating lunch. Outside and in the street were four or five persons, to-wit: the deceased, John Young, Jr., an Italian named Charlie Calcatarie, and one John Ward, Sr., and his son, John Ward, Jr. With them also was a man named Walter Jacobs, who lived in house No. 22. The night was a starlight night. While plaintiffs in error were in house No. 2, and while these parties were in the street, either opposite or very near to house No. 2, a pistol shot was fired. The evidence tends to show that more than one shot was fired, but whether two or three shots were fired, is left somewhat uncertain by the testimony. According to the testimony of a number of witnesses, the shots were fired considerably to the east of the place where these parties were standing in the street, and in or near what is spoken of as the main road, running north and south. After the firing of the second shot, plaintiff in error, George Colombo, came out of house No. 2 into the street, and asked who fired the shot. Calcatarie, who is said by some of the witnesses to have been intoxicated, replied to Colombo that he did not know who fired the pistol, and told

him, if he wanted to know who fired it, to go and find out. Colombo continued asking who fired the pistol, and John Ward, Sr., told him, that some one out in the road east of them fired it.

In a few moments, plaintiff in error, Tona Bonardo, came out of house No. 2, and entered into conversation with Calcatarie, and asked, as did Colombo, who fired the pistol. There is some testimony to the effect that the deceased, John Young, Jr., who was standing there in the street, replied to Bonardo that he had fired the pistol. The deceased had been drinking that evening, and was evidently under the influence of liquor. Some of the witnesses deny, that the deceased said that he had fired the pistol, and others state that he did say so. The evidence, however, does not show that any pistol was found in his possession. The impression, made upon the mind by the testimony, is that the pistol was not fired by the deceased.

When Tona Bonardo came out of the house, he and George Colombo rushed towards the deceased, after they had made their inquiries in regard to the shooting of the pistol, and struck and pushed him in his breast and on his side with their hands. They were subsequently joined in their onslaught upon the deceased by two other persons, who were subsequently indicted, but who escaped arrest. While plaintiffs in error were making this onset upon the deceased, the deceased took a bottle out of his pocket, and struck plaintiff in error, Tona Bonardo, in the face, or on the forehead, breaking the bottle and cutting Bonardo's face, so that it bled. After the deceased had thus struck Bonardo with the bottle, he ran away some forty-five feet. Plaintiffs in error, joined by the two persons already referred to, ran after the deceased, and renewed the attack upon him; they struck him, and knocked him down. While he was sitting upon the ground, he called out, and said: "Don't let them hit me any more." One of the Wards said: "For God's sake, don't.

let them hit him any more." John Ward, Jr., went forward, and picked up the deceased in his arms, and tried to carry him off, but plaintiffs in error pulled him away from Ward, and renewed the attack upon him. After he was prostrate upon the ground, these parties continued to strike and kick him. Some movement on the part of the attacking party seems to have been made towards making an attack upon John Ward, Sr. Thereupon, the Wards left the place where the fight occurred, but one of them returned in about thirty minutes, and found the deceased nearly dead. He was mortally stabbed, and a wound, about an inch and a quarter long, the result of the stab, was found in the left side of his body. The plaintiffs in error are shown by the evidence to have kicked and beaten the deceased, and, while doing so, one of them kept crying out, "Kill him, kill him." The testimony shows, that he was beaten into insensibility, and left prostrate on the ground, where he died in about an hour.

SMITH & HENSHAW, J. L. GALLIMORE, and WILLIAM A. SCHWARTZ, for plaintiffs in error.

EDWARD C. AKIN, Attorney General, (R. R. FOWLER, State's Attorney, and ED. M. SPILLER, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed by plaintiffs in error that the facts do not justify the verdict. The evidence was such as to warrant the jury in finding that plaintiff in error, Tona Bonardo, stabbed the deceased, and inflicted the wound, which caused his death. Before Bonardo left the house, and when the pistol shot was heard, he was sitting at a table with a butcher's knife in his hand, cutting cheese and bread to be distributed to those, who were there eating with him. When he left the house, he had the butcher's knife in his hand. When he returned to the house,

after making the assault in question, he still had the butcher's knife in his hand, and there was blood upon it. It is true that his face was bleeding from the blow inflicted upon him by the deceased with the bottle, and the witness, who speaks of seeing blood on the knife, says that he could not say whose blood it was. But Bonardo made an attack upon the deceased, and he is. the only person, shown to have had a weapon capable of inflicting the stab, which caused the death of the deceased.

Bonardo fled, and was arrested by the officers a mile and a half from the place of the killing, three days after it took place, in a yard, or field, where the weeds were high enough to conceal him. The proof shows, that it was difficult for the officers to find him on account of the weeds, in which he had concealed himself. He did not admit in so many words that he had stabbed the deceased, but, when asked by one of the officers, and also afterwards by the jailer, why he had stabbed the deceased, he replied, "Because he hit me with a bottle."

The plaintiff in error, Colombo, is shown by the evidence to have been engaged in the assault, made upon the deceased, and to have participated in the blows inflicted upon him. The testimony also shows, that Colombo cried out during the assault: "Kill him, kill him." When Colombo, who, as well as Bonardo, was an Italian, was asked to desist from striking the deceased, he said: "No God damned American can come here and shoot pistols." The proof also shows that, about a year prior to October 16, 1897, a difficulty had occurred between Colombo and the deceased, and threats were then made by Colombo against the deceased. We are of the opinion, that the verdict of the jury, so far as it applies to plaintiff in error, Colombo, was warranted by the evidence.

Plaintiff in error, Colombo, testified in his own behalf, and contradicted much of the testimony given by the other witnesses as to his participation in the killing of the deceased, and as to his utterances and conduct at

that time.   But it was for the jury to determine, as between the contradicting witnesses, where the truth lay. In *Gainey* v. *People*, 97 Ill. 270, we said (p. 275): "In capital cases, like the present, the accused, if guilty, has the most powerful and urgent of motives to misrepresent the real facts, and if this court is bound in every case of the kind to set aside the conviction merely because the testimony of the accused shows a case of justifiable homicide, it would not be long until there would be no security for life or limb, and trials by jury would become idle and useless ceremonies."

Verdicts of juries will not be interfered with by the courts, when they are manifestly authorized by the evidence.   There is nothing here to show, that the verdict was not the result of a dispassionate consideration of all the evidence in the case; and, this being so, it is not the duty of a court of review to set aside the conviction, unless it is shown that there is material and substantial error in the record.   It is peculiarly the office of the jury in criminal cases to pass upon the guilt or innocence of the prisoner; and, therefore, it is not our duty as a court to set aside the verdict of the jury in such a case, even though we may, on the written evidence of the record before us, entertain doubts of the correctness of the finding of the jury.   "What circumstances amount to proof of an offense can never be a matter of general definition. The test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury." (*Raggio* v. *People*, 135 Ill. 533; *Cronk* v. *People*, 131 id. 56; *Carlton* v. *People*, 150 id. 181).

It is contended on behalf of the plaintiff in error, Tona Bonardo, that the offense proved against him cannot be regarded as murder, but was merely manslaughter, or justifiable homicide.   We can see nothing in the mere fact of the firing of the pistol, which justified the assault made by Bonardo upon the deceased.   It is not shown by the evidence that the deceased fired the pistol at all.

Nor is there any proof, tending to show that the pistol was fired at either of the plaintiffs in error, or at the house where they happened to be at the time of the firing. As we understand the evidence, Tona Bonardo did not live in house No. 2, but was merely there for a temporary purpose. The deceased was only twenty years of age, and was slightly intoxicated on the evening when he was killed, and, if he fired the pistol, it does not appear that he so fired it with any evil intent; but the evidence shows that it was fired in the main road some distance to the east of house No. 2 and of the spot where deceased was standing. Words or gestures, however provoking or insulting, cannot amount to that considerable provocation which the law recognizes as necessary to reduce the killing from murder to manslaughter. (*Crosby* v. *People*, 137 Ill. 325). The mere firing of the pistol at a distance, even though it might be a provoking or insulting circumstance, could not be regarded otherwise than as belonging to the same category with such words or gestures, as are referred to in the books.

It is claimed, however, that the assault by Bonardo upon the deceased should be regarded as having been made in self-defense, because he had been struck by the deceased with a bottle. After Bonardo received the blow inflicted with the bottle, the deceased ran some forty-five feet, but Bonardo pursued him, renewing the attack, and stabbed him with a knife. This pursuit and renewal of the attack were not necessary to the defense of himself from further injury. Where a defendant is assaulted by the deceased in such a way as to induce a reasonable and well-grounded belief that he is in actual danger of losing his life, or suffering great bodily harm, he will, while under such reasonable apprehension, be justified in defending himself, whether the danger is real or only apparent. (*Roach* v. *People*, 77 Ill. 25). In *Kota* v. *People*, 136 Ill. 655, we said: "While actual danger is not necessary to justify a resort to self-defense, yet the circumstances

must be such, as to induce a reasonable and well-grounded belief of danger of actual loss of life, or great bodily harm." (*Davison* v. *People*, 90 Ill. 221; *Steinmeyer* v. *People*, 95 id. 383). In the case at bar, the court instructed the jury, at the request of the plaintiffs in error, that, if a person is unlawfully assaulted in such a way as to induce in him a reasonable belief that he is in actual danger of losing his life or sustaining great bodily harm, he will be justified in defending himself, even though the danger be not real, but only apparent. This instruction thus given was more favorable to the plaintiffs in error, than the instructions in regard to self-defense approved of by this court in the authorities above referred to. The question, therefore, as to whether defendant was justified in his attack upon the deceased upon the ground of self-defense, was fairly submitted to the jury, and plaintiff in error, Bonardo, cannot complain.

Before a homicide can be denominated manslaughter, the killing must be the result of that sudden and violent impulse of passion which is supposed to be irresistible. (*Nowacryk* v. *People*, 139 Ill. 336). The intent to commit murder is an essential element to show the existence of that crime, and such intent, like any other fact necessary to constitute crime, must be proved beyond all reasonable doubt. It is not necessary, however, that the party charged should have brooded over the intent, or entertained it for a considerable time. It is sufficient, if he intended to kill the party assaulted at the time when he made the assault. (*Weaver* v. *People*, 132 Ill. 536). In *Peri* v. *People*, 65 Ill. 17, we said: "To constitute malice, it is not necessary that the party should brood over and meditate upon the performance of the act for a considerable space of time; but it is sufficient, if it were deliberate and intentional, without apparently well-founded danger of great bodily harm, or where there is not such provocation as in law reduces the homicide to manslaughter." Malice is always implied where one person deliberately

injures another; and if a person uses a deadly weapon on another, resulting in his death, it must be inferred that the killing was malicious. (*Davison* v. *People, supra*). Bonardo was the aggressor in the first conflict, and he did not cease to be such until the deceased was disabled. It was for the jury to say whether, after he was struck by the deceased with a bottle, the killing was the result of such a sudden and violent impulse of passion as was irresistible; and it was for the jury to say whether, under all the circumstances, his conduct was the result of malice and intent to commit murder. They had a right to consider the fact, that he renewed his attack upon the deceased after the latter had run away, in determining whether, under all the circumstances, such renewal of the attack was necessary for his own defense, or was the result of a sudden and violent impulse, supposed to be irresistible.

*Second*—Plaintiffs in error complain of certain remarks made by the prosecuting attorney in his closing address to the jury. The record shows, that counsel for the plaintiffs in error objected to the remarks made, and that the objection was sustained by the court, and that the State's attorney thereupon withdrew the remarks and told the jury not to consider the same. In addition to this, the court, at the request of the plaintiffs in error, instructed the jury, that they should disregard any statements made by the prosecuting attorney, which were not based upon the evidence, if any such statements were made, as being wholly improper; and should not in any manner consider such statements in arriving at their verdict. It is apparent, therefore, that no injury was done the plaintiffs in error by the remarks in question. The court of review will always hesitate to set aside a conviction on account of remarks by the State's attorney, unless it appears that the jury were carried away by passion or prejudice in the rendition of their verdict. (*Raggio* v. *People, supra*). Nothing of the kind appears here.

*Third*—Plaintiffs in error make the objection, that the argument upon the motion for a new trial was made before the judge, before whom the case was tried, in his chambers in Golconda in Pope county, and that plaintiffs in error were not present during the argument. · It clearly appears from the record, that this was agreed to by the counsel for the plaintiffs in error. The record also shows that, when the presiding judge returned to the circuit court of Williamson county, he passed upon the motion for new trial in the presence of plaintiffs in error, and their counsel.

*Fourth*—It is objected by plaintiffs in error that, before the court read the instructions to the jury, he fastened them together in one bunch, placing a part of the People's instructions first, and then all of the instructions of the defendants, and then, lastly, the remainder of the People's instructions. This court has held in a number of cases that the charge to the jury, consisting of all the instructions requested by both sides, is one charge. Counsel for plaintiffs in error say, that the plaintiffs in error were thereby deprived of the privilege of having the theory of their defense properly submitted to the jury. It is not · apparent, that any such result was the consequence of this procedure. The instructions, asked by plaintiffs in error and given for them, were read consecutively, and their theory was fully presented to the jury without interruption or interpolation.

*Fifth*—It is furthermore charged by the plaintiffs in error, that the verdict in this case as to the plaintiff in error, George Colombo, was arrived at by chance. It is said, that the jury agreed to decide the fate of Colombo by a majority vote, which resulted in seven jurymen voting for a sentence of two years and five against the same; and that the verdict was thereupon rendered in accordance with such previous agreement entered into by the jury before the vote was taken. The only way, in which such matter was brought to the attention of the court

below, was by an affidavit, made by Colombo himself in support of the motion for a new trial. This court has held, that an affidavit setting up that the verdict of a jury was the result of chance, must not be upon the belief and information of the affiant. (*City of Pekin* v. *Winkel*, 77 Ill. 56). It is true that, here, the affidavit made by the plaintiff in error, Colombo, does not recite specifically that the affiant makes the statements therein made upon information and belief. But it is difficult to understand how they could have been made otherwise than upon information and belief. Plaintiff in error cannot, by stating a fact in an affidavit, set aside the verdict of a jury, when all the presumptions and circumstances of the case are against his having any knowledge on the subject, except so far as he derived information from others. It has been held by this court, that affidavits of jurymen will not be received to impeach their verdict, and that affidavits as to statements made by jurymen will not be received to impeach their verdict. (*Palmer* v. *People*, 138 Ill. 356; *Sanitary District* v. *Cullerton*, 147 id. 385). Plaintiff in error, Colombo, does not state how he derived his information upon this subject. If his affidavit had set up that the statements in regard to the rendition of a chance verdict were made to him by any of the jurymen, such affidavit could not be received. The statute provides that, when the jury retire to consider of their verdict in any criminal case, they shall be attended by a sworn officer. But it is improper for an officer of the court, or any one else not a juryman, to be present, when the jury are deliberating upon the subject of their verdict. Such a breach of duty on the part of an officer is a great irregularity. (*Gainey* v. *People, supra*). It will be presumed, that the officer in charge of the jury did his duty, and was not guilty of the breach of duty here referred to. (*Pate* v. *People*, 3 Gilm. 644). The law will presume, that Colombo was not present in the jury room while the jury were deliberating on his case. The law will also presume,

that the officer in charge of the jury did his sworn duty, and did not permit plaintiffs in error to hear or know anything of the deliberations of the jury. The burden is on plaintiffs in error to show, that the acts of the jury were illegal. The proceedings below will be presumed to be regular and free from error, until error is shown from the record. Every reasonable intendment, not negatived by the record, is to be indulged in support of the judgment below. (*Mullen* v. *People*, 138 Ill. 606; *Kelly* v. *City of Chicago*, 148 id. 90; *Chicago, Peoria and St. Louis Railway Co.* v. *Aldrich*, 134 id. 9; *Fairbanks* v. *Farwell*, 141 id. 354). In view of the presumptions and intendments above referred to, the statement made by the plaintiff in error could not have been made otherwise than upon information and belief; and, therefore, the court below committed no error in refusing to grant a new trial because of the statement so made in the affidavit.

*Sixth*—The further objection is made, that the indictment charges the plaintiffs in error with the murder of John Young, Jr., and that the testimony shows the murder of one "Johnnie Young;" and that, therefore, there is a variance between the indictment and the proof, which is fatal. Undoubtedly, the party killed must be proved to be the same person named in the indictment. (*Davis* v. *People*, 19 Ill. 74; *Shepherd* v. *People*, 72 id., 480; *Penrod* v. *People*, 89 id. 150).

The proof shows clearly that, although most of the witnesses speak of the party killed as "Johnnie Young," Johnnie Young was the same person as "John Young, Jr.," named in the indictment. Counsel, in questioning witnesses, and witnesses, in testifying, speak of John Young, as well as Johnnie Young. Counsel for plaintiffs in error begin instruction 29, which was asked by them and given in their behalf, in the following words: "Though the jury may believe from the evidence that said John Young, Jr., lost his life at the time and place in question," etc. The counsel for the prisoners, in the instructions asked by

them, thus refer to the person killed as John Young, Jr. This circumstance is mentioned in *Shepherd* v. *People, supra,* as a circumstance going to establish the identity of the person killed with the person named in the indictment.

The evidence does not show, that there was any other person known as John Young, Jr., in the neighborhood where the killing occurred, or connected with the events which transpired on the evening of the killing, than the Johnnie Young, or John Young referred to by the witnesses. Moreover, the abbreviations of a man's name are so common, that, without any violence to the law of the land, courts take judicial notice of them. (*Fenton* v. *Perkins,* 3 Mo. 144; 15 Am. & Eng. Ency. of Law, p. 115). Thus, "Jo" has been held to be equivalent to Joseph, and "Jack" has been held to be equivalent to John. (16 Am. & Eng. Ency. of Law, p. 115, note 4). Therefore, the court will take judicial notice that "Johnnie" is but another name for John. Again, the word "Junior" or "Jr." is merely a matter of description, and is no part of a person's legal name. "To improperly add or omit them is harmless error, whether in civil or criminal proceedings." (16 Am. & Eng. Ency. of Law, p. 121). In *Headley* v. *Shaw,* 39 Ill. 354, the declaration alleged that a note was made by the defendant by the name of Samuel Headley, whereas the note offered in evidence was signed "Samuel J. Headley, Jr.;" and we there said: "The weight of authority seems to be that this is no variance. Jr. added to a person's name is no part of the name."

We are, therefore, of the opinion that the evidence shows the identity of the person killed with the person named in the indictment.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*