People of the State of Illinois, Plaintiff-Appellee, v.
Bennie Fort, Defendant-Appellant.

Gen. No. 53,763.

First District, Third Division.

January 8, 1970.

Kenneth L. Gillis, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John R. McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Bennie Fort was indicted for aggravated battery. One count of the indictment charged him with causing great bodily harm, the other with using a deadly weapon. In a jury trial, he was acquitted on the first count, convicted on the second and sentenced to a term of one to three years in the penitentiary.

He contends that the evidence did not sustain either the charge of aggravated battery or the use of a deadly weapon, that he was not proved guilty beyond a reasonable doubt, that improper argument influenced the jury's verdict, and that error was committed by permitting the State to prove facts which were not set forth in its bill of particulars.

David Andrews, a 19-year-old college student, testified that in April 1967, as he was returning home about 10:00 p. m., he was approached by two youths, the defendant Fort and Larry Felder. Felder asked him where he lived, where he was going and whether he was a "Ranger." When Andrews replied that he was not a Ranger and was going home, Felder moved close to him; Andrews hit him and they started to fight. When Fort, who had said nothing, joined in the fight, Andrews withdrew and they chased him.

On May 13, 1967, they accosted him again. Andrews testified that Felder confronted him while Fort, who was carrying a small phonograph and some records, stood nearby. Felder thrust his face within three inches of Andrews' and Andrews attempted to kick him. Fort placed his phonograph and records on the ground and he and Felder exchanged blows with Andrews. Andrews bent down to tackle his assailants and Fort struck him on the back of the head with a stone, drawing blood. Andrews then picked up a large brick and started after them, but the brick was too heavy to throw and he dropped it on Fort's records. Fort and Felder grabbed

some fence pickets and chased Andrews. They threw the pickets at him, striking him in the back as he ran away. They pursued him into an apartment building but he eluded them and escaped.

A few minutes after Andrews came out of the building he saw Fort, Felder and a third youth, Lawrence Pickens. He fled and they ran after him. He took refuge in the foyer of a hotel and tried to hold the door against them but was unsuccessful. They pulled the door open and Felder threw a bottle which hit him in the same place where the stone had struck him. Although he was bleeding profusely, he struggled with them until they departed. Andrews was hospitalized and five stitches were required to close the lacerations in his scalp.

Fort denied meeting Andrews in April. He was corroborated in this by Felder and another witness. Both testified that the witness was the person with Felder on that occasion and that Andrews, without provocation, kicked Felder and then ran away.

Fort testified that when he and Felder met Andrews on May 13th, he leaned against a fence and listened to a record while Felder stopped Andrews to ask why he had kicked him when they last met. Andrews, he said, backed up and asked Felder if he wanted to fight. He said that Andrews started the fight by kicking Felder and him; that he was kicked in the stomach with such force that he almost was knocked down and did drop his phonograph. Andrews picked up a big brick, struck them with it and chased them. After he saw Andrews break his records, he and Felder secured sticks about the size of fence pickets, turned on Andrews, pursued him and threw the sticks at him. Andrews ran into an apartment building; they looked for but could not find him. They saw him again as he ran into the hotel and they went after him. He was holding the door but they forced it open. Felder threw a bottle which he had picked up on the way and it struck Andrews in the head. After this Fort

353

and Andrews fought and wrestled. Pickens got in the fight and was beating Andrews too. When Fort saw that Andrews was bleeding he told Felder and Pickens, "That is enough, let's go." They walked out of the hotel, but police had arrived at the scene and they were arrested soon afterwards.

Felder's testimony about the events of May 13th was similar to Fort's. Another defense witness, a youth who said he saw the altercation, testified that Andrews approached Fort and Felder and started kicking them. On cross-examination, however, he said that he did not see what occurred before the kicking; he also said, in contradiction to Fort and Felder, that the fight ended with Andrews chasing them.

No matter how the evidence is viewed, it establishes the charge of aggravated battery and the use of a deadly weapon. If Andrews' testimony is accepted he was struck with a stone and a bottle; if Fort's testimony is accepted Andrews was struck with a bottle. Both the stone and bottle, when used as described, were deadly weapons within the statutory definition of that term. Ill Rev Stats 1967, c 38, Art 24, § 24-1(a)(2); c 38, § 33A-1. The two statutes specifically proscribe certain weapons and contain general prohibitions against any other deadly or dangerous weapon or instrument of like character. A deadly weapon has been defined as "an instrument that is used or may be used for the purpose of offense or defense and capable of producing death." People v. Dwyer, 324 Ill 363, 155 NE 316 (1927). An instrument which is not deadly per se may become so by the manner in which is it used. Acers v. United States, 164 US 388 (1896); People v. Carter, 410 Ill 462, 102 NE2d 312 (1951).

If Andrews' testimony is believed, Fort and Felder were the aggressors. They molested him and com-

pelled him to fight in self-defense; they attacked him and forced him to take refuge in an apartment building and a hotel. If Fort's testimony is believed, Andrews was approached in a friendly manner but responded belligerently. He kicked them, chased them and destroyed Fort's property. Thereafter, according to Fort, they armed themselves with fence pickets, chased him into a building, searched for him, pursued him into a hotel, forced open the door, hit him with a pop bottle which Felder had picked up for that purpose and, reinforced by a friend, beat him until his bleeding prompted them to withdraw. Under either version, Andrews gave up the fight and ran from the scene. Even if Andrews initiated the encounter, Fort and Felder became the aggressors. The right to defend oneself does not permit the pursuit and injuring of an aggressor after the aggressor abandons the quarrel. People v. Peery, 81 Ill App2d 372, 225 NE2d 730 (1967).

 In his final argument the prosecutor told the jury that by his testimony ". . . Bennie Fort just made a confession from the witness stand. . . ." This is claimed to be prejudicial error. Although the word "confession" was ill-advised, we find nothing prejudicial in the prosecutor's comment. Fort's testimony was inculpatory. His own testimony made him as responsible as Felder for striking Andrews with the bottle. Statements by the prosecution which are predicated on the evidence or on reasonable inferences deducible therefrom do not transcend the bounds of legitimate argument. People v. Williams, 38 Ill2d 115, 230 NE2d 224 (1967). Moreover, no objection was made at the trial to the prosecutor's remark and, since it was not one that prevented the defendant from receiving a fair trial, further consideration of the present objection is not required. People v. Payton, 82 Ill App2d 51, 227 NE2d 87 (1967).

In answer to the defendant's request the State filed a bill of particulars which stated that the deadly weapon used by Fort was a brick and that this was the weapon which the State would rely on to prove his assault. At the trial, as we have seen, the State presented evidence concerning the bottle incident as well as the prior incident with the stone or brick. The defendant contends that the trial court erred in permitting proof of facts at variance with the bill.

The effect of a bill of particulars is to limit the evidence to the transactions set out in the bill. Ill Rev Stats 1967, c 38, § 111–6; People v. Parker, 355 Ill 258, 189 NE 352 (1934). However, it must be remembered that there were two counts in the aggravated battery indictment: one that the defendant used a deadly weapon, the other that he caused great bodily harm. While the bill of particulars limited the State's proof as to the former, it did not as to the latter. Evidence concerning the battery in which the bottle was used was relevant to the charge of causing great bodily harm. The fact that the jury found the defendant not guilty on this count is immaterial; the evidence was relevant at the time it was offered and received. The defendant not only did not object to the evidence concerning the bottle, he testified freely about it, and he did not raise the issue in his written motion for a new trial.

The State's evidence established that Fort committed an aggravated battery with a deadly weapon by striking Andrews with a stone. Andrews struck out at Felder but he did so only after Felder had provoked him by a face-to-face confrontation. Although he was well aware, from his April experience, that Fort would join Felder in whatever fight ensued, he stood his ground. He directed no blow at Fort until Fort started after him. Throughout the fight Andrews used only his hands and feet. The fact that he was about to tackle his adversaries did not justify Fort's striking him with a stone.

They were two to one against Andrews; he had brandished no weapon and Fort had no reason to believe himself in danger of receiving great bodily harm.

 A person is justified in the use of force only when, and to the extent, that he reasonably believes such conduct is necessary to defend himself against another person's imminent use of unlawful force. He may use force which is likely to cause great bodily harm only if he reasonably believes such force is necessary to prevent great bodily harm. Ill Rev Stats 1967, c 38, § 7–1. Fort's escalation of force, which resulted in splitting Andrew's scalp and spattering his suit with blood, was wholly disproportionate to his own defense and was completely unjustified.

The judgment is affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.