People of the State of Illinois, Plaintiff-Appellee, v.
Robert Edwin Cummings, Defendant-Appellant.

Gen. No. 11,206.

Fourth District.

July 30, 1970.

Kenneth E. Evans and James E. Fuson, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur, for appellee.

TRAPP, J.

A jury found defendant guilty of aggravated battery in the shooting of one Caplinger. Post-trial motions and a petition for probation were denied, and a sentence of one to five years was imposed.

Defendant's testimony raised the issue of self-defense. Issues raised on appeal are that defendant was not proven guilty beyond a reasonable doubt, and in the alternative, that the sentence imposed was excessive and should be reduced.

The principal locale concerned is a rural resort on the Sangamon River known as the River Rat Club. Caplinger was the owner and proprietor of the resort, which consists of a large building with adjacent areas where persons may reside in trailers for weekends and vacations. Defendant's estranged wife was then living with one Robbins in a trailer on the premises.

The wife had left defendant in June, 1968, and in October commenced divorce proceedings. Apparently, thereafter, but at times not clearly shown in the record, defendant went to the resort upon two occasions to talk with his wife, but each time she refused.

Defendant was employed in Decatur and living at the home of his parents on January 29, 1969. His testimony as to preceding events is that pursuant to some arrangement, defendant drove to a town some 35 miles distant to meet a friend and fellow employee. For reasons not explained in the record, he took a suitcase which he kept packed and under the bed at the home of his parents. At about 5:30 p. m., he met his friend at a tavern where he had beer—in quantities stated to be two to five glasses. It appearing that the acquaintance had other engagements, defendant returned to Decatur. At a time and place not described, he determined to go to the River Rat Club to talk with his wife with a view of settling their affairs, either through divorce or reconciliation.

Following such decision, he recalled that it had been said that Caplinger sometimes carried a .38 revolver and had said that he would take care of any trouble that occurred. The record does not show to whom this was said, or to what trouble reference was made. Defendant thereafter took his .38 revolver from the packed suitcase and put it in a holster on his right side. The record shows that he placed between 20 to 35 rounds of ammunition in his pocket, it being explained that the sack which contained such broke and that he did not want the loose rounds in the suitcase. We note that on cross-examination, defendant testified that he had been a member of the River Rat Club until he got a new boat; that he had known Caplinger for some years and that Caplinger had never threatened him, had never told him not to come to the premises, and that there had never been trouble between them.

While the evidence is not precise, between 9:00 and 9:30 p. m., defendant entered the Club building. He procured a can of beer for himself and one for Caplinger. Present in the main room and watching television were Caplinger, the latter's wife, Virginia Walters, Caplinger's daughter, defendant's wife, Luanna, Lloyd Robbins and

John Rehfelt. With the exception of the defendant, Caplinger and Rehfelt, those present were engrossed in television and could give but little testimony as to what occurred.

Those testifying upon the point agreed that defendant twice asked his wife to go to his car to talk with him and that twice she refused. Caplinger then said to defendant, in effect, "I don't want any trouble with you." Defendant denies this. It is agreed that defendant then asked Caplinger to go outside and that they did so.

Caplinger's testimony is that upon going outside to the car, defendant put his hand under his coat and said, "I am going to use. it"—but Caplinger said, "You are not going to use it out here," and that he had a gun, too. He then turned to go into the building, where he had a shotgun behind the door. At the door he reached for the shotgun and turned to find that defendant had entered immediately behind him and was standing at the head of a pool table; that he laid the shotgun on the pool table and said, in substance, "Are you crazy—I don't want any trouble, I want you to get out." Caplinger further testified that he did not think there was a shell in the chamber of the shotgun; that he seized it to bluff the defendant and that he laid the weapon on the pool table when he found defendant in the room, as he would not fire it in the room where others, including children, were present. Defendant drew, or started to draw his revolver, and Caplinger lunged toward him, managing to grab one arm, and the parties went to their knees and defendant shot him.

Defendant testified that when they were outside, he, defendant, said he intended to see his wife and that Caplinger could not protect her; that the latter said that he was not protecting her, turned and went into the building and that at the door Caplinger turned on him with the shotgun in his hand. Defendant recalls "going for his gun"; that he believes that he was hit from be-

461

hind and recalls nothing about what happened until he came to after the shooting.

Immediately after the shooting, defendant was grabbed and held on the floor by Rehfelt and Robbins and made to stay there until the sheriff's men arrived. In this process, defendant received some sound blows to the face, a badly split lip and the web of Robbins' finger was caught in the hammer of the revolver, making a bloody wound. The ambulance and sheriff's men were summoned.

Defendant argues that under the circumstances it is unbelievable that Caplinger would turn his back on defendant and return to the building and that defendant would follow carrying a cigar and a can of beer in his hands. Those items were found on the floor by the pool table.

He contends that the testimony of Rehfelt is most accurate, and points to the statement that Caplinger reached for the shotgun and then the trouble started. The balance of the record, however, shows the testimony of Rehfelt to be that Caplinger turned away, put the shotgun down and that defendant drew the revolver and Caplinger lunged for it before the shot was fired.

A physician examined defendant at about 3:00 a. m. at a hospital, sutured the split lip and had defendant X-rayed from head to toe. The physician's statement concerning defendant's apparent dazed condition immediately follows counsel's question concerning the injuries to defendant's face. There is no medical testimony as to any bruise or wound suggesting that defendant was hit from behind. The available evidence is that the other men present were some distance from the door watching television.

 Upon the issue of proof of guilt beyond a reasonable doubt, defendant urges that it is the duty of the reviewing court to resolve all facts in evidence upon

a theory of innocence. He cites The People v. Sheppard, 402 Ill 347, 83 NE2d 587; The People v. Stevenson, 25 Ill2d 361, 185 NE2d 199 and People v. Connie, 52 Ill App 2d 221, 201 NE2d 641, wherein the reviewing courts reversed verdicts of guilty in cases of assault. In Sheppard, the testimony of the defendant was corroborated both by the testimony of disinterested witnesses and by physical evidence. In Stevenson, defendant was charged with assault with a knife. It was, however, found shut in his pocket after the complainant had nearly beaten the defendant to death with a tire iron. Connie concerned a controlled narcotics purchase where the "State agent" was not available to testify under dubious circumstances which created a gap in the chain of evidence. It is essentially the function of the jury to determine the weight of the evidence and the credibility of the witnesses. In this case such jury function must operate upon the contradictory testimony of Caplinger and defendant. The testimony of one witness, if clear and convincing, is sufficient to convict. The People v. Lacey, 24 Ill2d 607, 182 NE2d 730, and The People v. Novotny, 41 Ill2d 401, 244 NE2d 182. The jury observed these witnesses, as well as those other witnesses who generally corroborated Caplinger. They had an opportunity to consider the possible interest or bias arising from the relationships existing among them. Defendant's testimony as to the circumstances of his taking up arms for the interview presents elements of credibility which are properly for the assessment of the jury. The trial court, who had similar opportunities to hear and observe, denied a post-trial motion. A reviewing court may not substitute its judgment for that of the trier of fact in determining the weight of disputed evidence or credibility of witnesses where the evidence is not so improbable as to raise a reasonable doubt of guilt. The People v. Novotny, 41 Ill2d 401, 244 NE2d 182.

■ Defendant argues that the indeterminate sentence of not less than one year nor more than five years is excessive. In the trial court it was contended that the sentence should be fixed with a minimum of one year and a maximum of one year. Such a sentence is undesirable, is not permitted under a requirement for indeterminate sentence, and affords no opportunity for parole supervision, inasmuch as eligibility for parole and discharge under the sentence would occur at the same time.

■■ While it is argued that defendant had no previous criminal record, evidence in mitigation was waived. The burden of presenting mitigating circumstances is upon the defendant, and he must make a substantial showing to justify a reduction of sentence upon review. The People v. Nelson, 41 Ill2d 364, 243 NE2d 225. The trial court had an opportunity to hear and observe the defendant during the various phases of the proceeding. Nothing in the record suggests that the sentence imposed is excessive.

■ Upon consideration of the several factors just discussed, the denial of probation was not an abuse of discretion. It is fortuitous that a homicide or other more serious offense did not occur.

The judgment is affirmed.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.