THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GENE HOPE, Defendant-Appellant.

(No. 59093;

First District (3rd Division)—September 19, 1974.

Paul Bradley, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Scott W. Peterson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Gene Hope, was convicted at a jury trial of robbery and was sentenced to a term of not less than 1½ and not more than 4½ years. He appeals the conviction on the grounds that: he was not proven guilty beyond a reasonable doubt; he was denied a fair trial because of the closing argument of the prosecutor; a jury instruction on show-up identification was improperly denied, and a mistrial was not granted after the admission of prejudicial evidence.

The victim of the robbery, Earl Barefield, testified that on March 21, 1971, at about 8:30 A.M., he left the Dawes Center at 12 South Peoria Street, Chicago, where he lived and began to walk to the Northwestern train station. He stopped on the corner of Peoria Street and Madison Street to rest. Across the street on the opposite corner, he saw Hope with some women and another man. Hope walked across the street and

brushed past Barefield touching Barefield's left pocket which contained a coin purse. Hope looked back at him and Barefield stared at Hope.

Barefield became apprehensive and he decided to return to the Dawes Center. Hope followed him. As he reached the door of the Center, Hope seized him, forced him to the ground and took the coin purse which contained $20.25 from his pocket. Hope then ran diagonally across Peoria Street toward the corner of Madison.

Leonard Kelly was approaching the Dawes Center and saw Barefield and Hope walking toward the Center from the opposite direction. He proceeded up the stairs inside the Center but stopped and looked through the open front door when he heard noises outside. He saw Barefield on the ground and saw Hope taking something from Barefield's pocket. Kelly ran after Hope; he stopped running when he reached the corner of Madison and Peoria, but watched Hope until he turned north on Green Street.

Kelly stood on the corner for several minutes. Then he saw a man, dressed as the robber had been, board an eastbound bus at the southwest corner of Madison and Halsted Streets.

A few minutes later, Kelly saw a police car and flagged it down. He told police officer John Murray about the robbery and about the man he saw board a bus. Murray drove to the Dawes Center, picked up Barefield and drove along the Madison Street bus route. Barefield described the robber to Murray as having hair combed straight up in front and wearing a light brown corduroy coat. Kelly described the robber as a black man about 6 feet tall between the ages of 20 and 25 years, wearing light blue pants and a brown corduroy jacket. When they overtook the bus, Murray drove his car with its blue lights flashing, to the front of the bus and stopped it. Murray boarded the bus and arrested Hope. He was wearing a brown corduroy coat and light blue pants. Kelly was waiting outside the bus and identified him as the robber. Murray then took Hope to the police car where Barefield also identified him. Murray searched him and found only $3 in change in his pockets. Murray went back to the bus and checked the area outside the bus, and inside around the defendant's seat looking for the stolen purse and money but he found nothing.

Murray drove Hope, Barefield and Kelly to the police station. Kelly was allowed to testify over defense objections that Hope asked him about the missing $30 before anyone had told him it had not been found.

The defendant testified that he was on his way to his sister's home when he was arrested. He said that he left home about 7 A.M., took a Halsted bus to Madison Street and got off to transfer to a Madison Street bus. Between buses, he had something to eat at a restaurant on Halsted

Street. Then he boarded the Madison bus on which he was later arrested. He denied asking Kelly about the missing money. He said that he was employed at the time of the robbery putting dies in a punchpressing machine at the Regal Manufacturing Company at 917 West 21st Place.

Officer Murray was called in rebuttal. He testified that the Regal Manufacturing Company manufactured dinette tables and bar stools; that it did not employ anyone to handle dies and did not employ Gene Hope. The defense objected to Murray's testimony as hearsay. The court said the testimony that Hope was not employed at the Regal Company would be stricken and the jury was instructed to disregard that testimony.

The defendant offered, but was refused, the following instruction:

"Where one accused of a crime is brought alone before the witness for the purpose of identification, such identification is not entitled to the same weight and credibility as where the witness picks out the accused from a number of persons brought before the witness."

The defendant's contention that he was not proved guilty beyond a reasonable doubt is based on the identifications made by Barefield and Kelly. He asserts that neither of these was credible and that the identification made by Barefield was unfairly influenced by Kelly's prior identification.

The procedure used by Murray was proper investigative conduct. Murray had a duty to determine as quickly as possible whether the victim of the crime could identify the person arrested, and the prompt confrontation between the victim and the suspect enabled him to determine whether the latter should remain in custody or be released. (*People v. Prignano* (1971), 2 Ill.App.3d 1063, 278 N.E.2d 128, *cert. denied*, 409 U.S. 851 (1972).) Barefield had had a sufficient opportunity to view Hope before and during the crime to offset any suggestion caused by Kelly's identification. A prior independent origin of a witness' identification can furnish insulation against a subsequent suggestive confrontation. *People v. Ashford* (1974), 17 Ill.App.3d 592, 308 N.E.2d 271.

■■■ The adequacy of both Barefield's and Kelly's identification was a question of credibility for the trier of fact and a reviewing court will not reverse the verdict of a jury unless the testimony is so unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Knowles* (1970), 130 Ill.App.2d 78, 264 N.E.2d 716, *cert. denied*, 404 U.S. 965 (1971).) Barefield saw Hope from across the street before the robbery, saw him when he came over and walked past him, and saw him during the robbery. Kelly saw Hope before the robbery, saw him during the daylight robbery, saw him running away and saw him during the chase. Both men viewed him long enough to enable them to make positive

identifications, and the short time that elapsed between the crime and the identifications enhances their credibility.

It is contended that all of Murray's testimony concerning Hope's employment at the Regal Manufacturing Company was hearsay, that its reception into evidence was prejudicial and that a mistrial should have been granted after its admission. It is further contended that the rebuttal testimony, which was not disclosed prior to trial, violated the spirit of Supreme Court Rule 412. (Ill. Rev. Stat. 1971, ch. 110A, par. 412.) The trial court stated that the testimony was admissible as long as Murray testified from his own observation. The court instructed the jury to disregard the testimony that Hope had never worked at the company because it was based on hearsay information. The balance of the testimony, even if hearsay, was not so prejudicial as to require a new trial.

■■ It was not necessary for the State to disclose Murray's rebuttal testimony in advance of his taking the stand. Section 114—9 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 114—9) requires the State, on motion of the defendant, to provide the defense with a list of prosecution witnesses. Subsection (c) of section 114—9 states that this requirement does not apply to rebuttal witnesses. Supreme Court Rule 412 was intended to implement section 114—9, not to abrogate it. *People v. Porter* (1973), 13 Ill.App.3d 893, 300 N.E.2d 814.

■■ The tendered instruction on the weight to be given identification testimony was properly rejected. The Illinois Pattern Jury Instructions (IPI-Criminal, No. 315 (1968)) recommends that no instruction be given on identification testimony because the subject can be adequately covered by general instruction on the credibility of witnesses. (*People v. Fox* (1971), 48 Ill.2d 239, 269 N.E.2d 720.) The State submitted such an instruction and it was given to the jury.

■■ The defense made only three objections to the prosecutor's closing argument. One was when the prosecutor asked why Hope was in the neighborhood at the time of the crime. It is asserted that this suggested to the jury that the defendant was under an obligation to explain his whereabouts. Because of the presumption of innocence, a defendant need not explain his presence in the vicinity of a crime. (*People v. Bean* (1970), 121 Ill.App.2d 290, 257 N.E.2d 558, *cert. denied*, 402 U.S. 1009 (1971).) However, the prosecutor's statements only questioned the plausibility of the defendant's explanation of what he was doing on the morning of the robbery and did not suggest that he had to explain his whereabouts.

■■ A second objection was to the prosecutor's statement that deputy sheriffs were present in the courtroom because of the defendant's antics. No prejudice resulted from that statement because the objection was

promptly sustained and the court told the jury that deputies were present at all jury trials.

The prosecutor incorrectly stated what constituted the burden of proof:

> "So what we are going to have to do now is take the defendant's case, as opposed to the State, see if that rebuts the presumption of reasonable doubt. In other words, create reasonable doubt. I ask you to scrutinize this case by the same standards you scrutinize ours."

■■ A defendant does not have to "create" a reasonable doubt. The burden of proof never shifts to the accused, but remains the responsibility of the prosecution throughout the trial. (*People v. Weinstein* (1966), 35 Ill.2d 467, 220 N.E.2d 432.) However, the correct description of the burden of proof was stated at other times during the trial and was fully set out in an instruction. We cannot say, therefore, that the jury relied on the prosecutor's faulty explanation in deciding the outcome of the case.

■■ An objection to an allegedly prejudicial argument will not be considered on appeal if the objection was not made at the trial, unless the argument is so prejudicial that it prevents a defendant from receiving a fair trial. *People v. Payton* (1967), 82 Ill.App.2d 51, 227 N.E.2d 87.

The other asserted errors in the prosecutor's closing argument are raised for the first time on appeal; they do not appear to have resulted in prejudice that denied the defendant a fair trial and we have not considered them for that reason.

The judgment is affirmed.

Affirmed.

McGLOON and MEJDA, JJ., concur.