THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SYLVESTER JOHNSON, Defendant-Appellant.

(No. 73-153;

Fifth District—November 25, 1975.

James R. Streicker and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

W. C. Spomer, State's Attorney, of Cairo (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Defendant, Sylvester Johnson, was charged by indictments with an aggravated battery against Melvin Smith and an aggravated battery and attempt (murder) against Randolph Tucker. He was tried by jury and found not guilty of the attempt (murder) and guilty of both aggravated batteries. He was sentenced to two concurrent sentences of one to three years. From his convictions and sentences he brings this appeal.

The evidence at the trial of defendant showed the following. On September 28, 1972, the defendant, while at a carwash in Cairo, Illinois, was approached by Melvin Smith and Albert Purchase. Smith and Purchase told defendant that he owed Smith some money and that he would have to pay it. When the defendant disagreed, either Smith or Purchase pulled a gun from a paper bag and threatened to kill or harm the defendant if he failed to produce the money. Apparently defendant was unable or refused to produce the money, so Smith told defendant that he would be coming to defendant's house to see about the money. Smith and Purchase then left the carwash.

The next evening the defendant was sitting in the living room of his home when someone knocked on the door. Defendant's brother told the person to come in. Defendant then looked up and saw Melvin Smith standing in the doorway with his hand under his jacket. According to the defendant, Smith asked for his money. Defendant then asked Smith to go outside, and as Smith went outside, defendant unzipped the case of a shotgun which was positioned nearby. Smith heard the unzipping and began to run from the porch. Defendant chased him and shot him at least one time, causing a neck wound. Smith tried to get into the car where Randolph Tucker sat waiting. However, by that time the defendant had reached the car and Tucker decided to try to escape on foot. As Tucker was running the defendant, thinking that Tucker was Albert

Purchase, shot him in the buttocks. Defendant's mother then came out and stopped the shooting.

Defendant has raised several issues on this appeal. He first contends that the record fails to show that the indictments charging him with the instant offenses were presented in open court. Defendant points specifically to the fact that the indictments did not have the signature of the clerk of the court or any other indication on their face that they had been presented in open court.

■■ Each of the indictments for aggravated battery, as well as the indictment for attempt murder, after stating the county, the date, the name of the defendant, and the particular offense charged, contain the handwritten notation "a true bill," the signature of the grand jury foreman, the signature of the State's Attorney, and the name of the witnesses who appeared. Although on each indictment there is a clause attesting that the indictment had been presented in open court and a line following that clause for the signature of the court clerk, such signature does not appear on any of the indictments. However, with respect to each offense there is a record sheet entry dated October 13, 1972, which reads, "Indictment filed," followed by a statement regarding the bail set.

Section 112—4(c) of the Code of Criminal Procedure (Ill. Rev. Stat., ch. 38, § 112—4(c)) provides:

> "(c) If 12 grand jurors concur that the evidence before them constitutes probable cause that a person has committed an offense the State's Attorney shall prepare a Bill of Indictment charging that person with such offense. The foreman shall sign each Bill of Indictment which shall be returned in open court."

Several Illinois cases have considered the question of what the record must contain in order for the court to hold the requirement that the indictment be returned in open court to have been met. (For example, see *Gardner v. People*, 20 Ill. 431; *Morton v. People*, 47 Ill. 468; *Yundt v. People*, 65 Ill. 372; *People v. Dennis*, 246 Ill. 559, 92 N.E. 964; and other cases cited in *Dennis* at 246 Ill. 559, 561.) Of these cases, *Morton* presents the factual situation most like that of the instant case.

In *Morton* the record stated that on March 18, 1868, "the following indictment was filed," after which the indictment was set out in the record. The indictment was subscribed by the State's Attorney and on its back appeared the notation "[a] true bill" followed by the signature of the grand jury foreman and the names of the three witnesses for the prosecution. The Illinois Supreme Court held this sufficient to show the indictment had been returned in open court. The court stated:

> "Some minor points have been made by plaintiff in error, which we will notice.

The first in this series is, that it does not appear the indictment was returned into open court.

We think this sufficiently appears from the entry on the record by the clerk, that the following indictment was filed on the 18th day of March, 1868, it being of the March term, and copying the indictment endorsed a true bill, and signed by the foreman of the grand jury, with the names of the witnesses endorsed thereon." (47 Ill. 468, 476.)

The record in the instant case, as did the record in *Morton,* sufficiently indicates that the indictments in question were returned in open court as required by statute.

Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt because the "evidence did not prove that the defendant's actions in self-defense were unjustifiable." This contention is without merit. The cornerstone of this contention is the underlying assumption that defendant's actions were, in fact, in self-defense. As the assumption falls, so does the remainder of the contention.

Whether the acts of a defendant can be justified on a theory of self-defense is always a question for the trier of fact. (*People v. Benedik,* 56 Ill.2d 306, 307 N.E.2d 382; *People v. Muldrow,* 30 Ill.App.3d 209, 332 N.E.2d 664.) The determination by the jury should not be disturbed unless the evidence is so unsatisfactory as to justify a reasonable doubt. *People v. Benedik; People v. Zuniga,* 53 Ill.2d 550, 293 N.E.2d 595; *People v. Hairston,* 46 Ill.2d 348, 263 N.E.2d 840, *cert. denied,* 402 U.S. 972, 29 L.Ed.2d 136, 91 S.Ct. 1658.

In the instant case the issue of self-defense was properly placed before the jury, and the jury was properly instructed on the law of self-defense as set out in I.P.I. Criminal 24.06. By finding the defendant guilty of the two counts of aggravated battery, the jury determined the self-defense issue adversely to the defendant.

The important question, therefore, is whether the evidence was so unsatisfactory as to justify a reasonable doubt so that the determination by the jury should be disturbed. The testimony of the defendant himself makes it clear that in neither the shooting of Melvin Smith nor the shooting of Randolph Tucker was defendant acting in self-defense. The following colloquies on direct and cross-examination of defendant illustrate this point very well. On direct examination defendant testified as follows:

"Q. Tell the court and jury, please, what happened.

A. I was sitting watching television and there was a knock on the door. My little brother told them to come in. I looked up and there stands Melvin Smith at the front door with his hand under his jacket, standing in the door. So I sit there for a few seconds

and walked up to him and asked him "Let's go outside." He asked could he have his money. I said "Let's go outside." He went out of the door and the gun was in the case in the corner. I grabbed the gun. He heard the zipper when I opened the zipper. He ran around to the passenger side of his car. I had the gun out by that time. I was scared to shoot and I was scared not to shoot, but I shot. And he was hollering to someone in the passenger side of the car. I heard that he kept a gun in his glove compartment * * *.

\* \* \*

A. He was hollering to the guy in the car and I was all excited and nervous and I ran around the car and this other guy jumps out of the car. I imagined it was Albert Purchase who made the threat and I shot him."

On cross-examination defendant testified as follows:

"Q. You say you mistook this other man for Purchase?
A. Yes, I did.
Q. Was this man in the car when you mistook him * * * where did this mistake of identity take place?
A. He jumped out of the car and I could see just the back of him.
Q. You saw the back of him?
A. Right.
Q. Then what did this man do?
A. He was running.
Q. Running in what direction?
A. From me.
Q. What did you do then?
A. I shot him to stop him.
Q. You shot him to stop him?
A. Right."

■■ From defendant's own admissions it is clear that he shot both Smith and Tucker as they were retreating or otherwise trying to flee. Under such circumstances, even if we were to assume that Smith and Tucker were originally aggressors, defendant could not escape criminal responsibility by claiming that he acted in self-defense. When the person originally the aggressor has withdrawn from the confrontation, the defendant who pursues him and uses deadly force against him loses the benefit of any claim of self-defense. (*People v. Thornton*, 26 Ill.2d 218, 186 N.E.2d 239; *Bonardo v. People*, 182 Ill. 411, 55 N.E. 519; *People v. Fort*, 119 Ill.App.2d 350, 256 N.E.2d 63.) As the court in *Fort* stated, "[t]he right to defend oneself does not permit the pursuit and injuring of an aggressor after the aggressor abandons the quarrel." (119 Ill.App.2d 350, 355, 256 N.E.2d 63, 66.) In the instant case the evidence was suffi-

cient to justify the determination by the jury that defendant had not acted in self-defense.

■■ Defendant next asserts that prejudicial error occurred during voir dire when the State's Attorney asked a Mrs. Roddy, one of the black veniremen on the panel, whether she would be afraid to return a guilty verdict. The entire context of this occurrence illustrates the harmless nature of the question.

"[STATE'S ATTORNEY]: If the State proved their case based on the law and the evidence beyond a reasonable doubt, would you have any hesitancy of returning a verdict of guilty?

MR. SMOTHERS: I would not.

[STATE'S ATTORNEY]: That would be as to all three charges?

MR. SMOTHERS: If he is proved, yes.

[STATE'S ATTORNEY]: Mrs. Roddy, would you do the same thing?

MRS. RODDY: Yes.

[STATE'S ATTORNEY]: You would not be afraid to return a verdict of guilty?

MRS. RODDY: That's right.

[STATE'S ATTORNEY]: Mrs. Tarver, would you answer the same way?

MRS. TARVER: Yes.

[STATE'S ATTORNEY]: Mrs. Vinson?

MRS. VINSON: Yes."

Defendant proposes, as did defense counsel at trial, that the questioning of Mrs. Roddy "prejudicially introduced the possibility that jurors might have something to fear from the defendant, a black man in a 60% white community." Viewed in the entire context of the questioning of the veniremen, it does not appear that the State's Attorney was suggesting that the jurors might have reason to fear the defendant. The State's Attorney was merely inquiring about the willingness of the jurors to return a guilty verdict if the State proved defendant guilty beyond a reasonable doubt.

"The right of parties litigant to a fair and impartial trial by a fair and impartial jury is entirely lost if the verdict can be set aside on matters which do not appear of record to be true or which lie in the imagination or apprehension of court or counsel." *Nordhaus v. Marek*, 317 Ill.App. 351, 363, 45 N.E.2d 993, 998.

Defendant's next contention is that he was denied a fair trial because of two misstatements of law made by the State's Attorney during closing argument. First, defendant points to the State's Attorney's comment that "[w]e don't care what happened at the car wash the day before." De-

fense counsel objected to this comment and the court ruled that the State's Attorney had only expressed his own feelings on the matter. Second, defendant points to an analogy drawn by the State's Attorney to the effect that the defendant could not be exculpated regarding the shooting of Randolph Tucker by claiming that he mistook Tucker for Albert Purchase, any more than a hunter who has shot a duck which is not legal game can be exculpated by claiming he thought the duck was of a different species which was legal game. Defense counsel objected to this comment as introducing an improper standard of law; the objection was sustained.

The court instructed the jury at length before the jury withdrew to determine the issues of fact. In one instruction the court advised the jury that the applicable law was stated in the instructions and that the jury had a duty to follow them. In another instruction the court stated that it was the jury's duty to determine the facts and to do so only from the evidence. The court went on to explain that the evidence consisted only of the testimony of the witnesses and the exhibits which the court had received and that the opening statements and the closing arguments of the attorneys were not to be considered as evidence. The court also properly instructed the jury on the elements of the offenses with which defendant was charged and on the law of self-defense.

Improper remarks by the prosecutor in his closing argument do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432, *cert. denied*, 398 U.S. 954, 26 L.Ed.2d 296, 90 S.Ct. 1881.) Substantial prejudice only results from improper argument when the verdict would have been different had the improper argument not been made. *People v. Lyons*, 26 Ill.App.3d 193, 324 N.E.2d 677; *People v. Hyman*, 25 Ill.App.3d 232, 323 N.E.2d 54.

■■ Any error in the above statements of the State's Attorney was cured by the combination of the rulings by the court and the proper explanation of the law later given by the court in the instructions. (*People v. Hope*, 22 Ill.App.3d 721, 318 N.E.2d 128; *People v. Smith*, 1 Ill.App.3d 518, 275 N.E.2d 268 (abstract opinion); also see *People v. Hall*, 1 Ill.App.3d 949, 275 N.E.2d 196.) In light of this fact and the fact that the evidence against the accused was clear and convincing, we cannot say that substantial prejudice resulted from the comments of the State's Attorney in his closing argument.

■■ Finally, the defendant contends that the imposition of a one- to three-year sentence for each offense of aggravated battery was excessive and that this court should reduce his sentence to a term of probation. Defendant did not request probation before the trial court and thus is

now, on appeal, asserting for the first time that probation would be a more appropriate disposition than would a term of imprisonment. The imposition of sentence is a matter within the discretion of the trial court. (*People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673.) In the absence of an application before the trial court for probation, we are unable to find an abuse of discretion in the defendant not being placed on probation, and, therefore, are in no position to say that probation should be granted. (See *People v. Ward*, 1 Ill.App.3d 888, 275 N.E.2d 256, in which substantially the same argument was made, although from a slightly different approach. Also see *People v. Grotti*, 20 Ill.App.3d 75, 312 N.E.2d 717.) As the Supreme Court has recently confirmed, a reviewing court is without power to modify a sentence of imprisonment imposed by the trial court to a term of probation. *People v. Bolyard*, 61 Ill.2d 583, 338 N.E.2d 168; *People ex rel. Ward v. Moran*, 54 Ill.2d 552, 301 N.E.2d 300.

■■ We find no merit to the assertion that the one to three-year sentences were excessive. Defendant was indicted under section 12—4(b)(1) of the Criminal Code (Ill. Rev. Stat.; ch. 38, § 12—4(b)(1)) for two offenses of aggravated battery. Section 12—4(b), as effective at the time of the commission of the offenses and the time of imposition of sentence in the instant case, as well as presently, provides the trial court with two alternatives in imposing a term of imprisonment. The court can impose a term of imprisonment not to exceed one year in a penal institution other than a penitentiary or the court can impose a term of imprisonment in the penitentiary from one to five years.

The defendant argues that he had no previous record other than a speeding ticket and a conviction of reckless driving, which he has appealed. Nevertheless, the defendant elected not to present any evidence in mitigation before the trial court. As in *People v. Cummings*, 125 Ill. App.2d 458, 261 N.E.2d 33, it is fortuitous that a homicide did not occur or that the two shooting victims were not injured more seriously than they were. Furthermore, the trial court had an opportunity to observe the defendant throughout the various phases of the proceedings and, as in *Cummings*, there is nothing in the record to suggest the sentence was excessive.

The judgment is affirmed.

EBERSPACHER and CARTER, JJ., concur.